(59 South. 972.)

No. 19,530.

CENTRAL GLASS CO., Limited, v. NIAGA-
RA FIRE INS. CO.

(Oct. 21, 1912. Rehearing Denied Nov. 18,
1912.)

*(Syllabus by Editorial Staff.)*

**1.** INSURANCE (§ 602\*)—FIRE INSURANCE—
PAYMENT OF LOSS—PENALTY FOR DELAY—
STATUTES.

Acts 1908, No. 168, § 3, providing for pay-
ment within 60 days after receipt of proofs of
loss, subject to a penalty of 12 per cent. dam-
ages for not doing so, of the amount due un-
der a fire policy, whenever any loss from
fire on property covered thereby shall be suf-
fered, does not apply to policies issued before
the law became operative.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1498; Dec. Dig. § 602.\*]

**2.** CONSTITUTIONAL LAW (§ 154\*)—OBLIGA-
TION OF CONTRACTS—REMEDIES.

Acts 1908, No. 168, § 3, requiring the
amount due under a fire policy to be paid
within 60 days after receipt of proofs of loss,
subject to a penalty of 12 per cent. for not
doing so, if applied to policies issued before
the law became operative, would impair the ob-
ligation of contracts; the change not being in
the remedy merely.

[Ed. Note.—For other cases, see Constitu-
tional Law, Cent. Dig. §§ 426–428, 442–444,
447–455, 458, 459, 461–473; Dec. Dig. § 154.\*]

**3.** CONSTITUTIONAL LAW (§ 46\*)—CONSTITU-
TIONAL QUESTION—WHEN ARISING.

The demand of plaintiff for a penalty and
attorney fees being founded on no contract, but
solely on a statute requiring their payment
in case the amount due under a fire policy is
not paid within a certain time after receipt of
proofs of loss, the question of the constitu-
tionality of the statute necessarily arises.

[Ed. Note.—For other cases, see Constitu-
tional Law, Cent. Dig. §§ 43–45; Dec. Dig. §
46.\*]

Action by the Central Glass Company,
Limited, against the Niagara Fire Insurance
Company of the City of New York. On ap-
peal to the Supreme Court from a judgment
for plaintiff, the case was sent to the Court
of Appeal, which certifies certain questions
to the Supreme Court. Questions answered.

See, also, 130 La. 221, 57 South. 895.

131 LA.—17

Lazarus, Michel & Lazarus and David
Sessler, all of New Orleans, for plaintiff.
Caffery, Quintero, Gidiere & Brumby, of
New Orleans, for defendant.

PROVOSTY, J. This case is before this
court for the second time. When it was here
the first time, a decision was rendered in
it; but, on application for rehearing, the
attention of the court was called to the fact
that the amount involved in it brought it
within the jurisdiction of the Court of Ap-
peal, and not of this court, and accordingly
the decision was set aside, and the case was
sent to the Court of Appeal. In the said
decision a prior decision rendered by this
court, in the case of Monteleone v. Insur-
ance Co., 126 La. 807, 52 South. 1032, had
been overruled. The Court of Appeal, not
knowing whether it should govern itself by
this overruled decision or by the decision
which had overruled it, but had itself been
set aside, has certified to this court the ques-
tions involved in the case, adding one oth-
er, which had not been raised on the previ-
ous hearing in this court, but which was
raised for the first time in argument in the
Court of Appeal. On the present hearing
the plaintiff has not filed any brief. The
former decision of the court, to which we
adhere, was in the following words:

"PROVOSTY, J. This is a suit upon a fire
insurance policy. The policy is in the standard
form. In addition to the amount of the insur-
ance, plaintiff claims damages and attorney's
fees; the latter claims being founded upon Act
168, p. 226, of 1908. We give this act in the
margin.[1]

---

[1]Act No. 168 of 1908.

Section 1. Be it enacted by the General Assembly
of the state of Louisiana, that whenever any loss
or damage shall be suffered in this state from fire,
by any person, firm or corporation, upon property
insured under a policy of insurance of any fire
insurance company doing business in this state,
and notice of the fact that such loss or damage
has incurred shall be given by the person, firm
or corporation incurring the same, or the agent
thereof, to the insurance company issuing such pol-
icy, or to the agent thereof nearest the place of

"It requires insurance companies to make payment within 60 days from notice of loss instead of, as stipulated in the policy, after 60 days from the adjustment of the loss, under penalty of 12 per cent. damages on the amount of the loss and reasonable attorney's fees; and it imposes upon the insurance company the duty of furnishing the assured a blank form for use in making the proof of loss.

"Defendant is now willing to pay the insurance, and contests only the claim for damages and attorney's fees. Defendant's refusal to pay was based on the fact that the officers of the plaintiff company had been indicted on the charge of having procured the building to be burned. After the criminal case had been tried, and the accused acquitted, the defendant tendered the amount of the policy; but plaintiff refused to accept the tender, unless the damages and attorney's fees were added.

"Defendant contends that said act has no application to policies which, like the one in suit, were in existence before the passage of the act, and contends, further, that attorney's fees are not required by said act to be paid in all cases, but only in cases where the delay in paying was unjustifiable, and contends, finally, that said act, if applied to policies already in existence at the time of its passage, would impair the obligations of contracts, in that it would require the insurance company to furnish a blank form for making the statement of the loss, which by the terms of the policy it is not required to do, and would change the point of departure of the delay of 60 days, within which, under the terms of the policy, the insured must render a statement of the loss, from the date of the fire to that on which the blank form for making the proof of loss is furnished, and, finally, would make the 60 days allotted for payment of the insurance run from the receipt of the proof of loss, instead of from the adjustment of the loss, as stipulated in the policy.

---

loss immediately after the date of such loss or damage—the limit to which reasonable time shall be mentioned in said policy and made a part thereof at the time of issuing the same, but the time fixed in the policy shall not be taken or construed to be a condition precedent to the right of recovery—then it shall thereupon become the duty of such insurance company to furnish to the person, firm or corporation incurring such loss or damage, such reasonable blank forms of statements and proofs of loss as such insurance company may desire to be filled out in regard to the time, origin and circumstances of the fire causing such loss or damage, and the knowledge and belief of the insured touching the same, the lists and description and quantity of property destroyed or damaged, and of property saved, and the original cost of such property, and the cash value thereof at the time of the fire, the details as to possession, ownership, title, and incumbrances and changes of title, use, occupation, location and exposure since the time of issuing such policy, if any, and other insurance, if any, and description and schedules in such policy.

Sec. 2. Be it further enacted, etc., that if any such fire insurance company shall fail, neglect or refuse to furnish blank forms of statements and proofs of loss to the insured, in case of loss or damage by fire, as provided in the preceding section, then such company shall be deemed to have waived the requiring of any statement or proofs of loss at the hands of such insured person, firm or corporation, and upon suit brought upon such policy, such insurance company shall not be heard to complain of the failure of the insured to furnish any such statement or proofs of loss, any provision in any such policy of insurance to the contrary notwithstanding.

Sec. 3. Be it further enacted, etc., that whenever any loss or damage shall be suffered in this state from fire by any person, firm or corporation upon property insured under a policy of insurance of any fire insurance company doing business in this state, it shall be the duty of the fire insurance company that has issued the policy or policies up- on receipt of proofs of loss from the assured, to pay the amount due under its policy or policies, within sixty days thereafter, or if the said proofs of loss are not satisfactory to the company, it shall be the duty of the company to proceed under the terms of the policy or policies to ascertain and adjust the amount of the loss and its liability under its policy or policies and to make payment of the amount due under the policy or policies to the insured within sixty days from the date upon which it received the proofs of loss offered by the assured, and should the company fail to pay, within said time, the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, 12 per cent. damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's. fees for the prosecution and collection of such loss; provided that whenever the insurance company shall pay to the insured within sixty days from the date upon which it received the proofs of loss offered by the assured, the amount which its suggestor or agent has determined or admitted to be due, then in that case the insured shall only recover from the said insurance company the difference between the amount thus paid him and the amount judicially ascertained to be actually due under the policy together with 12 per cent. damages on said difference and all reasonable attorney's fees for the prosecution and collection of such loss.

Sec. 4. Be it further enacted, etc., that all fire insurance companies doing business in this state shall deliver to the insured with each policy issued a copy of this act which shall be considered as part of the policy, contract, as full as if it were incorporated therein, and in a condition in the policy contract in contravention with the provisions of this act will be void and of no effect.

Sec. 5. Be it further enacted, etc., that all laws or parts of laws in conflict herewith be and the same are hereby repealed.

"All these points were passed on by this court in the case of Monteleone v. Insurance Co., 126 La. 807, 52 South. 1032. The court held that the act did apply to antecedent contracts, and did not impair their obligation, as the changes made by it were merely in the remedy for the enforcement of the contract, and not in the contract itself, and that the allowance of attorney's fees was discretionary. Upon further consideration, we have concluded that the act does impair the obligation of the contract; and, as this point disposes of the case, we spare ourselves the trouble of considering the others.

"There can be no denying that the act makes changes; the sole question must be as to whether the changes are in the contract itself, or merely in the remedy.

"By the remedy, as distinguished from the obligation of the contract, we understand the means of judicially enforcing the contract. And by the Legislature having complete control over the remedy, we understand that the parties cannot by their contract deprive the Legislature of its power to regulate the manner in which the power of the courts shall be exercised for the enforcement of contracts—for instance, cannot, by agreeing that their contract of lease shall be enforceable by distress for rent, deprive the Legislature of its power to abolish distress for rent (Cooley, Const. Lim. 349, 350); in other words, that parties cannot by their contracts deprive the Legislature of its power to change the laws of the state.

"But we do not understand that the Legislature has control over stipulations or conditions inserted in a contract as integral parts thereof, and not needing recourse to the judicial tribunals for being efficient. To allow the Legislature to change the contract in such features as these, existing solely by the will of the parties, and operating without need of any recourse to the judicial tribunals, would be to allow the Legislature to change or impair the contract of the parties. Even when such conditions and stipulations have come into the contract, not by express agreement, but merely as an effect of the existing law being read into the contract, they are beyond legislative control if they have become integral parts of the contract. Thus, as to a note already negotiated by indorsement, the Legislature cannot dispense with demand, protest, and notice for holding the endorser. Farmers' Bank v. Gunnell's Adm'x, 67 Va. 131. For other examples, see, also, Rose's Notes to Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529, rubric limitation upon the general rule.

"In the case at bar, the stipulations and conditions in question exist solely by the will of the parties, and need no recourse to the judicial tribunals for their efficiency, and are integral parts of the contract, and important at that. The delay within which payment becomes due under contract of insurance is as much an integral, vital part of the contract as the delay within which payment becomes due on a promissory note; and the conditions under which such payment becomes exigible are as much an integral, vital part of the contract as conditions in general are in contracts in general. If the Legislature could compel the insurance company to furnish a blank for use in making out the statement of loss, it could compel the company to furnish an expert for filling out the blank; in fact, if it be true that the proof of loss is a matter pertaining to the remedy, over which the Legislature has complete control, the Legislature might dispense the insured altogether from making proof of loss, and, in like manner, if the 60 days' delay is a matter pertaining to the remedy, the Legislature might dispense with the delay altogether, and require payment to be made at once; so that the payment would be due at once without any proof of loss having been made.

"We conclude that the said act, if applied to the policies already extant at the time of its enactment, would be unconstitutional.

"The judgment appealed from is affirmed in so far as it condemns the defendant company to pay the amount of the insurance with interest from judicial demand, and costs up to the time the tender was made of the said amount, and is set aside in so far as it condemns the defendant to pay damages and attorney's fees. Plaintiff to pay costs of appeal and all costs incurred subsequent to the tender."

The questions submitted by the Court of Appeal to this court for decision are as follows:

"First. Does Act 168 of 1908, § 3, apply to losses occurring after the law became operative, under policies of insurance issued before the law became operative?

"Second. If section 3 of Act 168 of 1908 does apply to such policies and losses, is said section unconstitutional, as impairing the obligation of the following clauses in the contract of insurance:

"'This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. Said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided, and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable 60 days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company.'

"'This company shall not be held to have waived any provision or condition of this policy or forfeiture thereof by any requirement,

act, or proceeding on its part relating to the appraisal or any examination herein provided for; and the loss not to become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisals have been required.'

"Third. Under the facts stated, does the unconstitutional question set forth in the foregoing interrogatory (No. 2) properly arise where, as in this case, the defendant has denied all liability on its policy of insurance immediately upon the happening of the fire, has been furnished by the insured with proofs of loss in due form to which no exceptions or objections have been taken, and has no request for an adjustment or appraisal?"

[1, 2] In accordance with the views expressed in the hereinabove transcribed opinion, we answer that section 3 of Act 168 of 1908 does not apply to policies of insurance issued before the law became operative, and that, if it so applied, it would be unconstitutional.

[3] And in answer to the third question we say that inasmuch as the demand of plaintiff for these damages and fees is founded, not upon any clause in the contract, but solely upon the said statute held to be unconstitutional, if applicable, the question of the constitutionality of these statutory provisions necessarily arises. The said statute fixes a time within which the insurance company shall make payment, and imposes the penalty in case payment is not made within the time thus fixed. Unless the clause which thus fixes a time for payment is applicable, the penalty, as a matter of course, cannot be imposed; and the said clause is held to be inapplicable to policies issued before its adoption, or to be unconstitutional if applicable.

After the foregoing opinion had been written, a brief was submitted by plaintiff, in which the following decisions, to wit: Farmers' & M. Ins. Co. v. Dobney, 189 U. S. 301, 23 Sup. Ct. 565, 47 L. Ed. 821; Iowa Ins. Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204; Fidelity Ins. Co. v. Mettler,

185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922; John Hancock Ins. Co. v. Warren, 181 U. S. 73, 21 Sup. Ct. 535, 45 L. Ed. 755; Orient Ins. Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; Seaboard Co. v. Seegers, 207 U. S. 73, 28 Sup. Ct. 28, 52 L. Ed. 108; Union Central Ins. Co. v. Chowning, 86 Tex. 654, 26 S. W. 983, 24 L. R. A. 504; Tillis v. Liverpool, London & Globe Ins. Co., 46 Fla. 268, 35 South. 171, 110 Am. St. Rep. 89; Hartford Ins. Co. v. Redding, 47 Fla. 228, 37 South. 62, 67 L. R. A. 518, 110 Am. St. Rep. 118; Co-operative Ins. Co. v. Corbett, 69 Kan. 564, 77 Pac. 108; St. Clara Academy v. Northwestern Insurance Co., 98 Wis. 257, 73 N. W. 767, 67 Am. St. Rep. 805; American Fire Ins. Co. v. Landfare, 56 Neb. 482, 76 N. W. 1072; Hanover Ins. Co. v. Gustin, 40 Neb. 828, 59 N. W. 375—are cited as bearing upon the second of the questions submitted by the Court of Appeal, and as holding that the matters which in the above transcribed opinion are held not to pertain to the remedy do so pertain. Those decisions do not appear to us to touch that point, but merely to recognize the right of a state to penalize insurance companies for not settling their losses promptly, which point is not involved in the present case.