ODOM, Justice,
 

 The defendant life insurance company issued to George Dewey Furlong a life insurance policy in the sum of $5,000 on February 3, 1926. The insured paid all premiums due on the policy up to April 2, 1934, when the policy lapsed for nonpayment of premiums. The insured died April 17, 1935, slightly more than one year after the policy lapsed. At the time of its lapse, the policy had a net reserve value of $211.51, which was sufficient if applied
 
 *355
 
 to the purchase of extended insurance to keep the policy in full force and effect for the amount thereof for a period extending beyond the date of the insured’s death. After the lapse of the policy, the insured availed himself of none of the options provided therein.
 

 Plaintiff, the mother of the insured, who was the beneficiary named in the policy, brought this suit for the full amount thereof.
 

 The defendant admitted in answer that it was due plaintiff the sum of $555; that being the amount of the paid-up endowment insurance due on the policy at the time of its lapse. It denied that it was due plaintiff the full amount of the policy because it had exercised the option granted by Act No. 57 of 1932 of using the net reserve value of the policy “to purchase upon the same life, at the attained age, paid-up insurance, payable at the same time, and under the same conditions, except as to the payment of premiums, as the original policy,” as provided in Act No. 57 of 1932.
 

 There was judgment in favor of plaintiff for the full amount claimed, and the defendant appealed.
 

 The facts are not disputed, and are as above stated. The sole issue involved is whether the provisions of Act No. 193 of 1906 apply to this case. If they do, counsel for defendant concede that plaintiff is entitled to the full amount of the policy. If, however, as defendant contends, the provisions of Act No. 57 of 1932, which amends and re-enacts Act No. 193 of 1906, § 2, apply, counsel for plaintiff concedes that the beneficiary is entitled to recover only $555, the amount of paid-up insurance.
 

 Act No. 57 of 1932 was adopted more than six years after this policy was issued. The law applicable to policies of this kind, in force at the time the policy was issued, was Act No. 193 of 1906. That act required that the reserve accumulated on policies of this kind be applied to the purchase of extended insurance where no other option expressed in the policies was availed of by the insured. Watson v. Metropolitan Life Insurance Company, 183 La. 25, 162 So. 790.
 

 Act No. 193 of 1906, § 2 provided that, “if no other option expressed in the policy be availed of by the owner thereof, the same [referring to the accumulated net reserve on the policy] without any further act on the part of the owner of the policy, shall be applied to continue the insurance in force at its full amount,” etc.
 

 Act No. 57 of 1932 amended and re-enacted the act of 1906. The provisions of the new act are practically the same as those of the former act, with the exception that the new act contains an added clause following the word “applied,” used in that clause of the act above quoted, so that the act now reads:
 

 “Provided that, if no other option expressed in the policy be availed of by the owner thereof, the same [the accumulated reserve], without any further act on the part of the owner of the policy, shall be applied
 
 either to the purchase upon the same life, at the attained age, paid-up insurance, payable at the same time, and
 
 
 *357
 

 under the same conditions, except as to the payment of premiums, as the original policy,
 
 or to continue the insurance in force at its full amount,” etc. (Italics indicate the added clause.)
 

 Under the act as amended, the insurer seems to have the option, in case the insured exercises none, of applying the accumulated reserve on the policies, either to the purchase for the insured of paid-up life insurance or to continue the insurance in force at its full amount so long as such surrender value will purchase nonparticipating temporary insurance, etc.
 

 Under the old law, if no other option expressed in the policy was availed of by the owner thereof, the accumulated reserve was automatically applied to the purchase of extended insurance. The law itself applied the reserve. Under the amended act, the insurer may apply the reserve.
 

 This is a radical change in the law, and, if the amended act applies to this case, the contract which the insured had with the insurer has been radically changed. A life insurance policy is a contract evidencing a mutual agreement between the insurer and the insured. As said in the case of Ritter v. Mutual Life Insurance Company, 169 U.S. 139, 18 S.Ct. 300, 304, 42 L.Ed. 693:
 

 “Life insurance imports a mutual agreement, whereby the insurer, in consideration of the payment by the assured of a named sum annually, or at certain times, stipulates to pay a larger sum at the death of the assured.”
 

 The insurance policy here involved is a Louisiana contract, and it seems to be conceded by both sides that the law of this state relating to insurance of this kind in force at the time this policy was written was, in effect, written into the policy. It follows therefore that this policy contract evidenced a mutual agreement between the insurance company and the policyholder that the policy should not lapse or become forfeited if kept in force three full years, by the nonpayment of any premium, and that the reserve on the policy, if no other option expressed therein be availed of by the owner, should be applied to continue the insurance in force at its full amount so long as such surrender value would purchase nonparticipating temporary insurance at net single premium rates. Such were the requirements of Act No. 193 of 1906, the law in force at the time the contract was entered into. The parties could not have deviated from the provisions of that act if they had so desired, because the act is mandatory in terms.
 

 The rule is that as individuals bind themselves so are they bound, and so must they remain bound. The parties to this contract bound themselves in 1926 in the manner and according to the legal requirements as of that date. Neither party ever voluntarily released the other from that contract, and therefore each was bound according to its stipulations up to the moment that the insured died, unless it be true, as counsel for the defendant argue, that the effect of the act of 1932 was to strike down that contract.
 

 
 *359
 
 It is strenuously argued by learned counsel for the insurance company that Act No. 57 of 1932, which amended and re-enacted Act No. 193 of 1906, § 2, so as to extend to insurers the right to apply the reserve on policies either to the purchase of paid-up insurance or to continue the insurance in force, was intended to be retroactive and apply to .all policies of insurance of this character issued since January 1, 1907, the effective date of the 1906 act. The ground upon which this argument is based is that Act No. 57 of 1932 provides, as did the act of 1906, “that no policy of life or endowment insurance * * * issued by any legal reserve life insurance company on or after January first, nineteen hundred and seven, after being in force three full years shall by its terms lapse,” etc.
 

 Merely because the new act refers to policies written after January 1, 1907, is no indication that the Legislature intended that the act be retroactive. The reason why the Legislature of 1932 left that date in the amending act is that section 17, article 3, of the Constitution, expressly provides that:
 

 “No law shall be revived or amended by reference to its title, but in such cases the act revived, or section as amended, shall be reenacted and published at length.”
 

 Act No. 57 of 1932 amended and reenacted’ section 2 of Act No. 193 of 1906, and under the Constitution it was necessary that the section amended by “published at length.”
 

 If Act No. 57 of 1932 be construed as having retroactive effect, it clearly violates both the Federal and the State Constitutions. Section 10, article 1, of the Federal Constitution, provides that: “No State shall * * * pass any * * * Law impairing the Obligation of Contracts.” Section 15, article 4, of the State Constitution, says that: “No ex-post facto law, nor any law impairing the - obligation of contracts, shall be passed.”
 

 If the act of 1932 is retroactive, all holders of policies of this kind written prior to its adoption are deprived of rights which they acquired under their contracts, into which the law in force at the time they were entered into was written. Their contractual right to have the reserve on their policies applied to continue the insurance in force at its full amount so long as the reserve would purchase nonparticipating temporary insurance is wiped out, utterly destroyed. One of the parties to the contract, the insurer, has been given the right and power to change and recast the contract in this respect to its own liking without notice to the other party and without his consent. Rights acquired under valid and legal contracts cannot be stricken down by subsequent legislation not adopted under the police power of the state.
 

 In Watson v. Metropolitan Life Insurance Company, supra, we said that Act No. 193 of 1906 was dictated by public policy, and it is argued that vested rights cannot be acquired under acts which express the public policy of the state. Why not? “By ‘public policy’ is intended that principle of the law which holds that no subject can lawfully do that which has a
 
 *361
 
 tendency to be injurious to the public or against the public good, which may be termed the ‘policy of the law,’ or ‘public policy in relation to the administration of the law.’ ” See 6 Words and Phrases, First Series, 5813, under the general heading, “Public Policy.”
 

 This legislation was adopted to protect policyholders generally. In that sense it expresses the public policy of the state. No reason is suggested by counsel why individuals may not acquire vested rights under such legislation.
 

 Counsel for the defendant apparently make no distinction between the “public policy of the state” and the “police power of the state,” for they say at page 27 of their brief:
 

 “We respectfully submit that neither insurance companies nor those purchasing policies can make contracts which would interfere with a proper exercise of the police power of the State of Louisiana.”
 

 That is unquestionably tnie. If it were not, the result would be that individuals could, by contracts between themselves, render of no avail the exercise by the state of its police powers. But the acts, under consideration were not adopted by the Legislature in the exercise of its police powers. They were not prompted by any economic or other emergency or threatened calamity, nor do they relate to the safety, the morals, the health, or general welfare of the people. The acts were adopted to protect policyholders, a particular class or group of individuals, and not for the protection of a basic interest in society. They were not adopted as a result of any universal or public requirement or to produce a result “obviously required for public safety or public morals.”
 

 Both the Federal and State Constitutions prohibit Legislatures from passing laws impairing the obligations of contracts, except in the proper exercise of their police powers'. The exception does not relate to public policy, but to the question of the proper exercise of police powers.
 

 Counsel for defendants cite United States Supreme Court decisions too numerous to be here noted to the effect that Congress may pass laws impairing the obligation of contracts. The cases cited relate generally •to the power of Congress to regulate interstate trade and commerce and the like. To illustrate, they cite the recent case of Federal Radio Commission v. Nelson Brothers Bond & Mortgage Co., 289 U.S. 266, 53 S.Ct. 627, 635, 77 L.Ed. 1166, where the court said:
 

 “‘This court has had frequent occasion to observe that the power of Congress in the regulation of interstate commerce is not fettered by the necessity of maintaining existing arrangements which would conflict with the execution of its policy, as such a restriction would place the regulation in the hands of private individuals and withdraw from the control of Congress so much of the field as they might choose by prophetic discernment to bring within the range of their enterprises.”
 

 The cases cited are not in point, because the Federal Constitution does not prohibit Congress from passing laws impairing the obligation of contracts. But
 
 *363
 
 it does specifically prohibit states from doing so.
 

 We find no merit in the argument that Act No. 57 of 1932 is remedial legislation, and therefore may have retroactive effect and still be constitutional. The statute is not remedial. In Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 630, 97 A.L.R. 1184, we said:
 

 “A
 
 remedial statute is one which confers a remedy and a remedy ‘is the means employed to enforce a right or redress an injury’ ”—citing authorities.
 

 It is contended by defendant that the insured’s right to extended insurance did not accrue until the policy lapsed in 1934, two years after the passage of the act. Counsel, we think, are in error. The insured’s rights in that respect were acquired, not when the policy lapsed, but when the contract of insurance was entered into in 1926.
 

 The act of 1932 was not intended to, and could not, affect policies issued prior to the date of its passage. In the case of Central Glass Company v. Fire Insurance Company, 131 La. 513, 59 So. 972, 974, one of the issues involved was whether section 3, Act No. 168 of 1908, applied to fire insurance policies issued prior to the date of the passage of the act. The court said that the statute was not remedial, and further:
 

 “In accordance with the views expressed in the hereinabove transcribed opinion, we answer that section 3 of Act 168 of 1908 does not apply to policies of insurance issued before the law became operative, and that, if it so applied, it would be unconstitutional.”
 

 Act No. 189 of 1914 exempts from debts of the assured the avails of insurance upon his life when payable to his estate. Before the passage of that act, one Clement became indebted unto the Bank of Minden. While so indebted, he took two policies upon his life, with loss clause payable to his executors, administrators, or assigns. He died in 1917, and his administratrix collected the sums named in the policies. His succession was insolvent, and the bank sought to subject the insurance money to their claims. It was the bank’s contention that, if the act of 1914 be construed to apply to that case and to exempt ■ such funds, the act would impair the obligation of their contract, entered into prior to its passage, and violate section 10, article 1, of the Federal Constitution'.
 

 It was held by the Supreme Court of the United States in Bank of Minden et al. v. Clement, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857, that the proceeds of the policies issued prior to the passage of the act of 1914 were not exempt from the debts of the deceased. Paragraph 2 of the syllabus reads as follows:
 

 “Act La. No. 189 of 1914, exempting from debts of the insured proceeds of insurance on his life when payable to his estate, violates Const, art. 1, § 10, prohibiting laws impairing the obligation of contracts, as applied to antecedent debts.”
 

 This case is directly in point here, as are the following Louisiana cases; Gillespie v. Cammack, 3 La.Ann. 248, 249, and Town v. Morgan’s Syndics, 2 La. 112, 20 Am.Dec. 299.
 

 In the trial court the defendant excepted to the petition on the ground that
 
 *365
 
 Act No. 193 of 1906 is unconstitutional. It does not appear that counsel pressed this exception, and the trial judge made no ruling upon it. We have considered the question raised by the exception because it is stressed in counsel’s brief, and are of the opinion that the act is constitutional, and we can give no better reasons for so holding than were stated by the Orleans Court of Appeal in Succession of Watson v. Metropolitan Life Insurance Company, 156 So. 29, where that court was called upon to pass upon the validity of that act. The grounds for attacking the validity of the act in that case were the same as those urged in the present case. We adopt the reasons stated by the Court of Appeal for holding this act constitutional as our own, without incorporating them "in this opinion.
 

 For the reasons assigned, the judgment appealed from is affirmed with costs.
 

 O’NIELL, C. J., absent.