600 So.2d 117 (1992)
Marlene O. DIER, Plaintiff,
v.
Orlando N. HAMILTON, Jr., et al., Defendants.
No. 23478-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1992.
Hudson, Potts & Bernstein by Gordon L. James, Monroe, for Orlando N. Hamilton, Jr., Donald K. Carroll, and Hamilton & Carroll.
Phelps Dunbar by H. Alston Johnson, III, Jennifer Zimmerman, Michael D. Ferachi, Baton Rouge, for New England Ins. Co.
Achee & Dupree, Ltd. by MacAllynn J. Achee, J. Glenn Dupree, Carvel A. Sims, Baton Rouge, for Marlene Dier.
*118 Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for Leonard Carlton Ward.
Before LINDSAY, HIGHTOWER and STEWART, JJ.
LINDSAY, Judge.
Several parties in this legal malpractice case, which was settled after lengthy negotiations, appeal the trial court judgment awarding interest on the settlement funds against two of the defendants but denying penalties and attorney fees against all of the defendants. We reverse in part and affirm in part.

FACTS
This case has been before the court previously on an unrelated matter. See Dier v. Hamilton, 501 So.2d 1059 (La.App. 2d Cir.1987), wherein the complicated underlying facts are set forth in detail. Briefly, the plaintiff, Marlene Dier, filed a legal malpractice suit against Orlando N. Hamilton, Jr., claiming that he failed to disclose a conflict of interest to her and that he provided improper legal advice due to his own financial interest. She further asserted that Mr. Hamilton's actions led to the seizure and sale of her immovable property, which was encumbered with a judgment owned by Mr. Hamilton and his law partner. Also named as defendants were Hamilton's law partner, Donald K. Carroll; their partnership, Hamilton & Carroll; and their professional liability insurer, New England Insurance Company.[1]
Apparently, settlement discussions occurred which came to fruition in January of 1991. On January 30, 1991, Michael Ferachi, counsel for New England, sent a letter to Glenn Dupree, one of the plaintiff's attorneys, to "memorialize" a settlement agreement between them "pending the drafting of the formal settlement documents.... [Emphasis ours.]" The defendants were to pay $60,000 in exchange for the plaintiff's dismissal of all claims against the defendants in this suit. The plaintiff was also to forego activity in any of the defendants' bankruptcy proceedings. Provisions were made for the payment of court costs. The letter specified that once Mr. Dupree signed the letter, Mr. Ferachi would order the check and "commence the drafting of the formal settlement documents."
Dupree signed the letter and, on January 31, 1991, Mr. Ferachi notified Gordon James, counsel for Hamilton and Carroll, of Mr. Dupree's acceptance.
Over the next few months, letters and faxes were sent back and forth between the attorneys for the different parties in an attempt to confect an agreement which all could accept. A total of five drafts were circulated among the attorneys, three by New England and two by plaintiff's counsel. The attorneys tried to "massage" the language to make it acceptable to all parties.
New England accepted the responsibility of drafting the documents. On February 18, 1991, the first draft of the agreement and joint motion to dismiss was sent to Mr. James and Mr. Dupree. However, on February 20, 1991, Mr. Dupree informed Mr. Ferachi that he could not recommend the first draft to his client because it did not contain certain reservations. Accordingly, Mr. Dupree sought two changes in the draft.
These changes were incorporated in a new draft of the agreement on February 20, 1991. Mr. Dupree said he would recommend the new draft to the plaintiff. He was informed that the settlement funds would be paid upon the approval of New England's insureds (Hamilton and Carroll) as New England was required to secure their consent.
On February 21, 1991, the agreement was sent to Mr. James, who subsequently informed New England that the draft was not agreeable to his clients. The following day, Mr. James further informed the others that Mr. Hamilton would be out of the country on a cruise for three weeks.
*119 However, on March 1, 1991, Mr. Dupree informed New England that the plaintiff refused to sign the draft of February 20th. This information was followed on March 4, 1991, by the delivery of a substantially rewritten draft of the agreement to Mr. Ferachi from Carvel Sims, plaintiff's co-counsel. On March 13, 1991, Mr. Sims sent yet another draft to Mr. Ferachi because the plaintiff would not sign the March 4th draft. New England did not agree to the March 13th draft. On March 21, Mr. Dupree informed Mr. Ferachi of certain requirements set forth by his client. New England agreed to these terms.
On March 25, 1991, Mr. Dupree announced that the plaintiff was prepared to sign the final version of the agreement, which was then sent to Mr. James. However, on April 9, 1991, Mr. James informed New England that his clients refused to sign because there was no hold harmless and indemnity clause to protect them from other litigation which might arise from these facts.
In May of 1991, the plaintiff filed a "motion to enforce settlement, request for sanctions, legal interest, costs and attorney fees." In this motion, the plaintiff claimed that, after several attempts, a draft similar to the January 30th letter was finally completed around March 25, 1991, and that she approved this document. However, on April 11, 1991, when her attorney requested the settlement proceeds, he was informed by New England's counsel that its insureds would not sign the agreement and that the insurer was contractually required to have their consent for settlement. Thus, the plaintiff alleged that the court should order that the settlement agreement be enforced and that she be awarded legal interest, travel expenses "and appropriate sanctions including attorney fees, court costs and all remedies permitted by law."
New England filed an opposition. It asserted that between January 30, 1991, and March 25, 1991, the most significant delay factor in the inability of the parties to agree upon the terms of the settlement was the withdrawal of the plaintiff's consent to the agreement on two occasions. From the period of March 25, 1991 to May 1, 1991, the delay resulted from the refusal of Hamilton and Carroll to sign unless a hold harmless and indemnity clause was added to protect them from any other suits.
On May 6, 1991, the day before the motion for sanctions was to be heard, Mr. Ferachi delivered to Mr. Sims a settlement document which had been signed by Mr. Hamilton on May 3, 1991, and by another party, Leonard Carlton Ward, on April 8, 1991. (Hamilton and Carroll agreed to sign after receiving certain assurances from New England as to the payment of their deductible in any future suits arising out of the same facts.) Additionally, Mr. Ferachi showed Mr. Sims a settlement check dated April 4, 1991.
The hearing on the plaintiff's motion was held on May 7, 1991, at which arguments were heard. Plaintiff's counsel acknowledged that enforcement of the settlement was no longer before the court. However, he contended that the issues surrounding plaintiff's claims for damages, interest, and attorney fees remained. Plaintiff's counsel also maintained that the delay in confecting the settlement was not her fault. (They argued that she could not have withdrawn her consent because she did not initially consent to any draft until the end of March.)
The defendants agreed that enforcement of the settlement was moot. They also argued that the plaintiff had no legal basis for seeking the remedies enumerated in her motion. Furthermore, Hamilton and Carroll contended that their negotiations were reasonable efforts to protect their interests.
At the conclusion of arguments, the trial judge stated that she didn't know "how much authority" she had to rule that interest was due from January 30, 1991. Nonetheless, the trial court ordered that Mr. Hamilton and Mr. Carroll, individually, pay legal interest on the settlement funds from January 30, 1991, until paid, and court costs associated with the motion. The court rejected the plaintiff's claims for penalties and attorney fees. A judgment in *120 conformity with the court's ruling was signed on May 15, 1991.
Subsequently, on June 12, 1991, pursuant to a joint motion, the plaintiff's original suit was dismissed with prejudice. While each party bore its own costs, New England paid the costs of dismissal.
Mr. Hamilton and Mr. Carroll appealed suspensively. They claim that the trial court erred in ordering them to pay interest on the settlement funds. The plaintiff also appealed, contending that the trial court erred in not awarding penalties under LSA-R.S. 22:1220 and attorney fees.

AWARD OF LEGAL INTEREST ON SETTLEMENT FUNDS
Hamilton and Carroll claim that the trial court erred in ordering them to pay interest on the settlement amount when the delay which occurred between the tentative agreement and the execution of the final agreement was required for negotiations to formulate an agreement satisfactory to all parties. They also contend that the trial court erred in granting the plaintiff's motion for interest on the basis of only the argument presented at the hearing, without the taking of evidence. They also argue the lack of legal authority for the award of interest.
We note that there was no request at the hearing that evidence be adduced. Nor was there any objection to the lengthy recitations of facts presented in argument by each of the attorneys. Although Mr. Sims reserved his right to put on evidence if his recitation of the facts was disputed, he made no effort to do so despite the many contradictions between the various versions of the facts. Instead, Mr. Sims merely responded with additional arguments. Thus, we find that all counsel implicitly agreed that the trial court was to render judgment based only upon oral argument and the exhibits attached to their respective pleadings. Any objection to this manner of proceeding was waived.
However, we agree that there is no legal basis for requiring Mr. Hamilton and Mr. Carroll to pay legal interest on the settlement amount. Certainly, the plaintiff has not cited any such authority. (The only provision even mentioned at the hearing was LSA-C.C.P. Art. 371, which pertains to the appropriate conduct of attorneys.)
After a careful evaluation of the evidence, we conclude that many important aspects of the settlement were not agreed upon until after protracted negotiations which involved all parties. Mr. Dupree admitted at the hearing that when he and Mr. Ferachi signed the letter on January 30, 1991, they "envisioned that there would be a settlement compromise agreement that would be a little more encompassing than the terms of that letter." All of the parties were concerned, not only with safeguarding their interests in the instant suit, but also with protecting their respective positions in other law suits derived from related facts, including bankruptcy proceedings. (The bankruptcy proceedings involving several defendants were apparently of great concern.) Counsel for Hamilton and Carroll stated that some of the changes sought by the plaintiff to protect her position in other litigation necessitated corresponding changes on behalf of his clients.
In light of the significant negotiations which took place over the period of time in question, and finding no fault on the part of the defendants, we conclude that there was no basis justifying the trial court's award of interest. Therefore, we reverse the judgment insofar as it ordered the defendants Hamilton and Carroll to pay interest on the settlement funds.

PENALTIES AND ATTORNEY FEES
The plaintiff also contends that the trial court erred in not awarding penalties under LSA-R.S. 22:1220 and attorney fees.
New England argues that LSA-R.S. 22:1220 is inapplicable and that the trial court was correct in refusing to impose sanctions and attorney fees against it. Also, since the plaintiff failed to seek penalties under LSA-R.S. 22:1220 at the trial court level, it contends that she is precluded from invoking that statute for the first time on appeal.
*121 LSA-R.S. 22:1220 provides, in pertinent part:
A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
....
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.

....
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.... [Emphasis ours.]
Since the plaintiff did not raise LSA-R.S. 22:1220 at the trial court level, she may not raise it for the first time on appeal. See and compare Taylor v. First Jersey Securities, Inc., 533 So.2d 1383 (La. App. 4th Cir.1988), writs denied, 538 So.2d 593, 594 (La.1989). However, assuming arguendo that this issue is properly before this court, we find that the record contains no evidence justifying an award of damages or penalties against any party under the statute.
The agreement in this case was not reduced to writing until the parties signed it shortly before the hearing. As previously noted, one of the plaintiff's attorneys admitted that after the signing of the January 30th letter the parties envisioned the drafting of a more comprehensive document. Thus, LSA-R.S. 22:1220(B)(2) is inapplicable.
We also find LSA-R.S. 22:1220(B)(5) to be inapplicable. This statute applies only to claims due to an insured. The plaintiff does not qualify as an insured of any of the defendants. Even if this provision were applicable, there is no showing of conduct that was arbitrary, capricious, or without probable cause.
Furthermore, attorney fees are not allowed in Louisiana except where authorized by statute or contract. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985). In the present case, no contract or statute provides for an award of attorney fees to the plaintiff.
Consequently, we find that the trial court was correct in refusing to award penalties or attorney fees in this case.

CONCLUSION
The judgment of the trial court is reversed in part to the extent that it ordered Mr. Hamilton and Mr. Carroll to pay interest on the settlement funds. The judgment is otherwise affirmed. Costs are assessed against the plaintiff.
REVERSED IN PART, AFFIRMED IN PART.
NOTES
[1] Other defendants who apparently did not participate actively in the drafting of the settlement were Ward Brothers, Frank Ward, and Leonard Carlton Ward.