664 So.2d 81 (1995)
John M. MANUEL and Patricia A. Manuel
v.
The LOUISIANA SHERIFF'S RISK MANAGEMENT FUND, Et Al.
No. 95-C-0406.
Supreme Court of Louisiana.
November 27, 1995.
*82 Marshall M. Redmon, John Randall Trahan, and Harry Alston Johnson, III, Phelps Dunbar, New Orleans, for Applicant.
Victor L. Marcello, Donaldsonville, for Respondent.
CALOGERO, Chief Justice.[*]
We granted certiorari in this case to determine the applicability of La.Rev.Stat. 22:1220 which establishes penalties for insurers who fail to deal and act in good faith towards their insured and third party claimants.[1] The question before the Court is whether R.S. 22:1220 can be applied regarding settlement proceeds of an insurance policy issued before the statute was enacted if the conduct which gave rise to the suit occurred after the statute's effective date.
The district court ruled that the application of the statute to an insurance policy which predated the statute is a retroactive application which impairs the obligations of contract. The court of appeal reversed, holding that application of R.S. 22:1220(B)(2) to conduct which occurs after its enactment (in this case settlementand delay in payment thereafter) is prospective in nature and not an impairment of an insurance policy which pre-dates the settlement in such a case.[2] For the reasons which follow we affirm the decision of the court of appeal.
John Manuel was involved in an automobile accident with Deputy Daniel Luckett of the Iberville Parish Sheriff's Department on March 11, 1988. He suffered numerous injuries as a result of the accident.[3] It is undisputed that Deputy Luckett caused the accident while acting in the course and scope of his employment. John Manuel, along with his wife, Patricia, filed suit against the Iberville Parish Sheriff's Department, the Sheriff's primary and excess insurers, the Louisiana Sheriff's Risk Management Fund and the Fund's excess insurers, the latter being members of a British insurance syndicate.[4] Prior to trial the plaintiffs settled with the Sheriff, the Sheriff's primary insurer and the *83 plaintiffs' own underinsured motorist carrier, State Farm for a total of $416,363.87, but did not settle at that time with the insurance syndicate.[5]
The plaintiffs did not initially reach a settlement with the excess insurers of the Fundthe British insurance syndicate. The majority of the members of the syndicate were placed in receivership by the British government where they teetered on the brink of insolvency for several months. Plaintiffs contend that prior to trial they were induced to settle with the syndicate, in some measure because of fears regarding the syndicate's financial condition.[6]
On November 18, 1991, plaintiffs agreed to settle their claims with the syndicate for $350,000. The terms of the settlement were that $320,000 was to be paid in cash and the remaining $30,000 was to consist of an assignment of claims against the excess insurers which had become insolvent. The settlement was reduced to writing and all parties signed it on November 18, 1991. Counsel for the syndicate assured the plaintiffs that despite the syndicate's poor financial health the settlement funds would be paid within thirty days.
Thirty days came, thirty days passed, and the plaintiffs were not paid, despite repeated requests from plaintiffs' attorney and diligent efforts from the syndicate's attorney. The settlement funds were not paid until January 24, 1992, some sixty-eight days after the settlement was reduced to writing on November 18, 1991. It was another forty-two days, March 5, 1992, before the assignment of claims against the insolvent insurers was forwarded.
Shortly after the settlement funds were paid and the claims assigned, the Manuels filed a damage suit against the insurers under R.S. 22:1220(B)(2) and Civil Code Articles 1966 and 1992. Plaintiffs sued for severe mental pain and anguish, physical pain and suffering, loss of use of the settlement funds, loss of investment income, and penalties under R.S. 22:1220 as a result of the delay. They claim that during the delay they had feared that the insurers had become insolvent and their settlement worthless.
R.S. 22:1220 provides that "an insurer" owes "a duty of good faith and fair dealing" and "has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant." Among a group of proscribed acts, if knowingly committed by an insurer, failing to pay a settlement within thirty days after an agreement is reduced to writing constitutes a breach of the duties imposed by the statute.[7] The statute became effective *84 on July 6, 1990, subsequent to the date the insurance policy was issued and over two years after the accident occurred. However, the statute was in effect when the settlement was reduced to writing on November 18, 1991.
Anglo-American Insurance responded to the suit by filing a peremptory exception of no cause of action, arguing that R.S. 22:1220 should not be applied to the case. As noted earlier, the district court judge sustained the exception, holding that the statute was a substantive change that impaired the insurer's contract obligations. The Manuels appealed. The court of appeal held that although the statute became effective after the issuance of the insurance policy, and after the date of the accident, there was not involved any retroactive application of the statute's provisions and no impairment of Anglo-American's contractual obligations. The court of appeal found that the obligations the statute imposed were separate from those recited in the insurance policy. Thus, the statute could be applied to the case without impairing the contract.
In applying R.S. 22:1220 to a situation where an insurance policy was entered into before the effective date of the statute, and where the violation occurred after the statute, the First Circuit resolved a significant unresolved issue of law. See Supreme Court Rule X, § 1(a)(1) and (2). We granted certiorari to decide whether application of the statute in this instance is unconstitutional as a retroactive application of a substantive change in law which impairs the obligations of the insurance policy.
The principle that laws are to have a prospective and not retroactive effect is a basic principle of most legal systems. Planiol notes that France, from which Louisiana inherited its Civil Code, adopted this principle because:
There would be no security for private persons if their rights, their fortunes, their personal status, the effects of their acts and of their contracts, could be questioned or modified or suppressed at any moment because the law-maker had changed his mind.
1 M. Planiol, TREATISE ON THE CIVIL LAW, § 240 (La.St.L.Inst.Trans.1959).
Part of the reasoning supporting this statement is to prevent the impairment of contracts, which is, of course, prohibited by the Constitutions of the United States and of Louisiana. U.S. Const. art I, § 10, cl. 1 and La. Const. art. I, § 23. Anglo-American argues that application of R.S. 22:1220 to this case would impair the obligations of its contract. After a thorough review we find that the statute does not impair the contract.
We base our finding on the following reasons. First, the statute does not speak on a matter that is a subject of the contract, or is specifically addressed in the contract. The statute speaks of an insurer's obligation to act in good faith toward insured and non-insured claimants and establishes penalties for the commission of certain acts, none of which are covered in the contract. Thus, the subject matter of the statute is unrelated to that of the contract. Additionally, R.S. 22:1220 does not alter or change specific terms of the contract. In relation to this case, the statute speaks to undue delays in the payment of settlements reduced to writing. The duties that it does impose upon insurers are separate and distinct from the duties mentioned in the contract of insurance. These duties apply to the insurer's obligation not simply to pay, but to promptly pay valid claims under the settlement, with, in this case, the non-insured claimant. Simply put, there is no contractual impairment present.[8]
*85 Second, under the public policy of this State, all liability policies exist and are "executed for the benefit of all injured persons." La.Rev.Stat. 22:655(D). Liability policies are written for the "benefit of third parties, who suffer injury or damage because of actions of the insured." Descant v. Administrators of the Tulane Educational Fund, 93-3098, p. 2 (La. 7/5/94), 639 So.2d 246, 251 (Ortique, J., dissenting); Lindsey v. Colonial Lloyd's Insurance Company, 595 So.2d 606, 614 (1992) (Hall, J., concurring); Hughes v. Southeastern Fidelity Insurance Company, 340 So.2d 293 (La.1976); and Lou-Con v. Gulf Building Services, Inc., 287 So.2d 192 (La.App. 4th Cir.1973). The statute provides a method by which insured and non-insured claimants can recover for damages caused by insurers. R.S. 22:1220 merely provides a means by which insured and third-party claimants can exercise their rights under insurance policies "executed for the benefit of all injured persons." R.S. 22:655(D). Because of this public policy, La.R.S. 22:1220 is remedial in nature and applicable to all pre-existing insurance policies. "Statutes of this kind have been held invulnerable to charges that they... impair the obligations of contracts." Wright v. National Surety Corporation, 59 So.2d 695, 698 n. 2 (La.1952) (holding that the application of La.Rev.Stat. 22:658 to an insurance policy entered into before the statute did not impair the contract even though it imposed penalties for late payment of claims).
Anglo-American cites Central Glass Company v. Niagara Fire Insurance Company, 131 La. 513, 59 So. 972 (1912), as a case in which this Court refused to apply a change in the insurance law to a contract because the statute impaired the obligations of the contract. Under the terms of the statute, the defendant Niagara Fire was required to:
[m]ake payment within 60 days from notice of loss instead of, as stipulated in the policy, after 60 days from the adjustment of the loss, under penalty of 12 percent damages on the amount of the loss and reasonable attorney's fees; and [the statute] impose[d] upon the insurance company the duty of furnishing the assured a blank form for use in making the proof of loss.
Central Glass, 59 So. at 973.
Different facts present themselves in this case. Central Glass is therefore distinguishable. The facts of Central Glass indicate that the terms of the contract were clearly impaired. The statute at issue directly contradicted the terms of the policy and altered specific provisions of the insurance contract. Niagara Fire was required to "make payment within 60 days from notice of loss instead of, as stipulated in the policy, after 60 days from the adjustment of loss." Id. The statute specifically changed the terms of the contract. That is not the case here as R.S. 22:1220 does not alter, change, or contradict any term of the insurance policy in this case.
Anglo-American's companion argument to contract impairment is that the statute is a substantive change in the law which is being applied retroactively. The Louisiana Civil Code prohibits the retroactive application of substantive changes in the law. Article 6 of the Code speaks directly to this issue:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
La.Civ.Code art. 6. Yet, despite the Civil Code's statement on the issue of retroactivity, La.Rev.Stat. 1:2 states that "[n]o section of the Revised Statutes is retroactive unless it is expressly so stated." There is a possible *86 conflict, or perhaps ambiguity, between these two provisions in that the Civil Code allows retroactive application of a procedural or interpretative law without legislative consent while R.S. 1:2 does not. However, this conflict has been resolved, for R.S. 1:2 has been limited to apply only to substantive and not procedural or interpretive legislation. St. Paul Fire & Marine Insurance Company v. E.R. Smith, 609 So.2d 809, 816 (La.1992); Lott v. Haley, 370 So.2d 521 (La.1979); Pierce v. Hobart Corporation, 939 F.2d 1305, 1308 n. 3 (5th Cir.1991); and Yamaha Motor Corporation v. Bonfanti Industries, 589 So.2d 575, 581 (La.App. 1st Cir.1991).
In order to determine whether R.S. 22:1220 is being applied in a retroactive manner we must engage in a two part inquiry. The first step involves determining whether the Legislature expressed an intent concerning the retroactive or prospective application of the law. If the Legislature did express such an intent, the process is at an end and the law must be characterized as the Legislature intended. However, if no intent is expressed by the Legislature, we must discern the Legislature's intent and ourselves classify the law as either substantive, procedural or interpretive. Segura v. Frank, 93-C-1271 (La. 1/14/94), 630 So.2d 714 (La.1994); Cole v. Celotex Corporation, 599 So.2d 1058 (La. 1992); St. Paul Fire & Marine Insurance Company v. E.R. Smith, supra; and Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167 (5th Cir.), reh'g denied, 920 F.2d 259 (5th Cir.1990).
The Legislature passed R.S. 22:1220 during the 1990 legislative session and provided that it was to become effective on July 6, 1990. The statute has no expression regarding its retroactive or prospective application. We must therefore determine if the statute was intended to be, or should be, interpreted one way or the other. Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that "establish new rules, rights and duties or change existing ones." St. Paul Fire & Marine, 609 So.2d at 817. Procedural laws address the methods for enforcing an existing right or relate to how a law operates. Segura v. Frank, supra. Interpretive laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted.[9]Id.
The court of appeal classified R.S. 22:1220 as a substantive change in the law. Our review of the statute reveals that it imposes several duties upon insurers, such as: requiring them to act in good faith and deal fairly with their insured and non-insured claimants; regulating the time period in which claims must be paid; and specifying damages that must be paid for failure to comply with its provisions. These duties were not in the statutory law before 1990. More particularly, the statute, for the first time, required insurers to deal in good faith with non-insured claimants and exposed them to penalties and attorney fees in some instances for dealing unfairly with such non-insured claimants.
In support of its position Anglo-American cites several cases where the court of appeal refused to apply R.S. 22:1220. The first is Rusch v. Cook, 619 So.2d 122 (La.App. 1st Cir.1993), in which the non-insured third party plaintiff was involved in an automobile accident on May 21, 1990, and the defendant/insurer purportedly failed to adjust and settle his claim fairly. The defendant/insurer moved for summary judgment arguing that the statute was inapplicable because both the accident and the acts which gave rise to the violation of the statute occurred before the statute's enactment. The plaintiff argued that the violation of the statute "continu[ed] *87 after the effective date of the act and, therefore, since the conduct" was ongoing, the statute should apply. Rusch, 619 So.2d at 124. The court of appeal refused to accept the notion that the violation was "continuing" and granted summary judgment in favor of the defendant/insurer.
Another case cited is Jeffries v. Estate of Pruitt, 95-1442 (La.App. 1st Cir. 6/24/94), 638 So.2d 723, where the plaintiff's wife died in an automobile accident on June 13, 1984, and the plaintiff filed suit against the defendant/insurer sometime prior to July 30, 1986[10], "based upon the insurer's bad faith distribution of ... policy proceeds." Jeffries, 638 So.2d at 726. In both of these cases, the accident and the insurance company's conduct occurred prior to the enactment of R.S. 22:1220.[11]
These cases, cited by the defendants, are distinguishable from the situation in this case. The Manuels settled with the syndicate on November 18, 1991, over a year after the statute became effective. At that time, R.S. 22:1220 was in force. The defendants, despite their duty under the law, failed to pay the settlement funds within 30 days after the settlement was reduced to writing. The cause of action that gave rise to this litigation was the failure to pay within 30 days. Given the facts of this case, the statute is being applied only prospectively, i.e. after its 1990 effective date. It is of no consequence that the insurance policy and the accident pre-date the statute, since the conduct which exposes the defendants to liability occurred after the statute became law.
The Louisiana Fifth Circuit Court of Appeal recognized this important distinction in Tarver v. Eckstein Marine Service, Inc., 93-796 (La.App. 5th Cir. 2/23/94), 633 So.2d 764. Tarver involved a case where the plaintiffs suffered damages as a result of a marine collision with the defendant's vessel on February 22, 1990. The plaintiffs filed suit against Eckstein Marine on February 19 and 20, 1991, seeking compensation for their injuries. On March 25, 1993, the plaintiffs entered into a settlement with Eckstein Marine.[12] Yet, on June 3, 1993, the claims had not been paid. The plaintiffs filed suit seeking damages and penalties under R.S. 22:1220(B)(2). The court of appeal dismissed the argument that R.S. 22:1220 should not apply because the accident occurred prior to the statute's effective date. The court of appeal distinguished Rusch and Jeffries and held that:
[T]he conduct that gives rise to the claim is the untimely payment of the settlement and not the collision of the vessels.
* * * * * *
The triggering event for the claim of penalties is the failure of the insurer to pay the settlement within thirty days from the dated the March 25, 1993, agreements were reduced to writing. Thus, retroactivity is not an issue since the "claim" arose after the effective date of the statute.
Id., 633 So.2d at 766. We agree with this reasoning in Tarver.
The delay of Anglo-American in paying the settlement after it was reduced to writing was a clear violation of R.S. 22:1220. Although the statute was enacted after the insurance policy was issued and after the date of the accident, the event which grants *88 the plaintiffs a cause of action is the failure to pay the settlement within 30 days, and this happened after enactment of the statute.

DECREE
For the foregoing reasons the judgment of the court of appeal is affirmed and this matter is remanded to the district court.
AFFIRMED; REMANDED.
MARCUS and WATSON, JJ., concur and assign reasons.
WATSON, Justice, concurring.
The law is clear that the plaintiffs are entitled to penalties for the violation of R.S. 22:1220. However, when the various insurance companies are considered, some in England, some in Europe, some in Australia and possibly some in the United States, it is obvious that collecting funds to pay a settlement would require a long time. This fact should be considered in further proceedings. Counsel for the insurers could have obtained a waiver or an extension of the payment.
For these reasons, I respectfully concur.
MARCUS, Justice, concurring.
I agree with the majority's conclusion that La.R.S. 22:1220 applies in this case. However, I disagree with certain statements in the majority opinion dealing with the obligation of the insurer to third party claimants. It appears that subsection A of the statute creates two separate duties: one to the "insured" (of good faith and fair dealing) and one to third party "claimants" (to make a reasonable effort to settle their claims). D'Abreu v. Diesel Power International, Inc., 625 So.2d 540, 542 (La.App. 5th Cir.1993). Certain obligations under the statute have been held to apply only to an insured and not to a third party claimant. Levy v. Cummings, 25475 (La.App.2d Cir. 1/19/94), 631 So.2d 55; Dier v. Hamilton, 600 So.2d 117 (La.App.2d Cir.1992). Since I believe the present case, arising under subsection B(2), involves an obligation to a third party claimant, I concur in the majority's holding.
NOTES
[*] Judge Lemmie O. Hightower, Court of Appeal, Second Circuit, sitting by assignment in the vacancy created by the resignation of Justice James L. Dennis, now serving on the United States Court of Appeals, Fifth Circuit.

Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Failure to pay a settlement within thirty days after an agreement is reduced to writing under R.S. 22:1220(B)(2) is one of the acts, if knowingly committed by an insurer, that constitutes a breach of the insurer's duty to act in good faith toward insured and third party claimants.
[2] The plaintiffs' petition for penalties and attorney fees under R.S. 22:1220 was met with an exception of no cause of action which the district judge sustained. On appeal by plaintiffs, the court of appeal reversed the district court, overruling the exception, and ordered the case remanded.
[3] Plaintiff suffered a complete loss of the use of his left arm.
[4] Anglo American Insurance Company apparently was the only member of the syndicate served with the suit. Other members of the syndicate include Walbrook Insurance Company, Anglo-American Insurance Company, Ltd., Capital Insurance Company, Ltd., Kraft Insurance Company, Ltd., (N/K/A Kingscroft Insurance Company, Ltd.,) El Paso Insurance Company, Ltd., Louisville Insurance Company, Ltd., (N/K/A Lime-Street Insurance Company, Ltd.), Ludgate Insurance Company, Ltd., Mutual Reinsurance Company, Ltd., Compagnie Europeene D'Assurances Industrielles, S.A., C.E., Heath Underwriting and Insurance (Australia) PTY, Ltd., and General American Fidelity and Guaranty Corporation.
[5] Plaintiffs received from State Farm $100,000, and from Liberty Mutual, the Sheriff's primary liability insurer, $316,363.87.
[6] Walbrook Insurance Company, one of the defendants, was placed into receivership and withdrew itself from the list of insurers authorized to do business in the State.
[7] The statute, in full, reads as follows (emphasis added):

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverage at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
D. The provisions of this Section shall not be applicable to claims made under health and accident insurance policies.
E. This Section shall not apply to industrial and burial insurance companies, as provided for in R.S. 22:251 and 253 or to any insurer that markets under the Home Service Marketing distribution method and issues a majority of its policies on a weekly or monthly basis.
F. The Insurance Guaranty Association Fund, as provided in R.S. 22:1375 et seq, shall not be liable for any special damages awarded under the provisions of this Section.
[8] Even assuming there were a contractual impairment, Anglo-American's claim still would likely fail. The prohibition against contractual impairment is limited only by the power of the State to protect its citizens. Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983); Board of Commissioners v. Department of Natural Resources, 496 So.2d 281, 292 (La.1986) and Segura v. Frank, 93-1271 (La. 1/14/94), 630 So.2d 714, 728. Board of Commissioners allows the State to impair a contract if (1) the impairment is not of "constitutional dimension"; (2) if a public purpose justifies the regulation; and (3) if the adjustment of the rights of the parties is based upon reasonable conditions and is appropriate to a "significant and legitimate public purpose" which justifies the law's adoption. Id. at 292-93. All of these factors are present in this case.
[9] Planiol states that:

What [interpretive laws] do is to determine the meaning of existing laws. It follows that they may apply to facts previous to their promulgation. Their retroactivity is but apparent, because it is not the interpretative law, but the original law, which applies.
1 M. Planiol, § 251 supra. The ability of the Legislature to enact "interpretive laws" under Article 6 may be unconstitutional because it may involve the exercise of judicial duties. See, Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576 (La.1974); St. Paul Fire & Marine Insurance Co., v. Smith, 609 So.2d 809, 818 (La.1993) and H. Alston Johnson, LegislationProcedure and Interpretation, Developments in the Law, 1983-84, 45 La.L.Rev. 341, 344 (1984).
[10] The Court of Appeal's opinion in Jeffries does not clearly establish when the plaintiff filed suit. However, the opinion does indicate that the trial judge denied an exception of no cause of action, submitted by the defendant, on July 30, 1986. Jeffries, 638 So.2d at 725, n. 3. Thus, the cause of action giving rise to the litigation occurred prior to July 30, 1986, and prior to the enactment of the 1990 statute.
[11] The same is true of other cases cited by the defendant for this proposition: Hidalgo v. Old Hickory Insurance, 630 So.2d 252 (La.App. 5th Cir.1993) (conduct giving rise to the claim for penalties under R.S. 22:1220 occurred prior to statute's enactment); Gretna Realty Company v. Hartford Steam Boiler Inspection, 617 So.2d 215 (La.App. 5th Cir.1993) (court refused to apply R.S. 22:1220 to insurer's failure to pay claim within sixty days of proof of loss when cause of action arose prior to statute's passage) and Federal Insurance Company v. St. Paul Fire and Marine Insurance Co., 93-0555 (La.App. 1st Cir. 3/11/94), 634 So.2d 40 (effective date of the statute was subsequent to the commencement of the insurer's duty).
[12] The settlement was between the plaintiffs and Eckstein Marine. Eckstein's insurers were not parties to the settlement although they were providing the funds to pay the plaintiff.