630 So.2d 252 (1993)
Shannon HIDALGO, Geraldine Hidalgo and Joseph Hidalgo
v.
OLD HICKORY INSURANCE COMPANY, Aetna Casualty and Surety Company and Victoria Vernor.
No. 93-CA-26.
Court of Appeal of Louisiana, Fifth Circuit.
September 15, 1993.
Opinion Amending Decree and Denying Rehearing January 12, 1994.
*253 Frank M. Buck, Jr., Robert L. Manard, Law Offices of Robert L. Manard, APLC, New Orleans, for plaintiff-appellee Shannon Hidalgo.
Stephen M. Duvalle, Maryann G. Hoskins, Lenfant & Associates, Metairie, for defendant-appellant Aetna Cas. and Sur. Co.
Before KLIEBERT, C.J., and BOWES and CANNELLA, JJ.
KLIEBERT, Chief Judge.
This appeal involves a suit for personal injuries sustained by plaintiff, Shannon Hidalgo, in a two vehicle collision on January 10, 1987 at the intersection of Manhattan and Gretna Boulevards in Jefferson Parish. The Hidalgo vehicle was rear-ended by a vehicle driven by Victoria Vernor. Ms. Hidalgo filed a suit for damages against Ms. Vernor, her liability insurer, Old Hickory, and against Aetna Casualty and Surety Company (Aetna), the uninsured/underinsured motorist insurer of her own vehicle.
Prior to trial, Ms. Vernor and her liability insurer, Old Hickory Insurance Company, paid their policy limits of $10,000.00 and were dismissed from the suit. Also prior to trial, Aetna offered plaintiff a $10,000.00 payment from the $100,000.00 limits of the uninsured/underinsured motorist coverage. Plaintiff refused the offer, reserved her rights against Aetna and amended her suit to claim statutory penalties and attorney's fees for Aetna's alleged arbitrary and capricious refusal to pay the full limits of the uninsured/underinsured motorist coverage in this case.
After a bench trial, judgment was rendered against Aetna, awarding plaintiff general and special damages totalling $90,000.00, being the remaining limits of Aetna's uninsured/underinsured motorist coverage, and further awarding plaintiff a penalty payment of $9,000.00 and attorney's fees of $22,500.00 under the provisions of LSA-R.S. 22:658. The judgment also awarded plaintiff court costs, the costs of depositions introduced at trial and expert witness fees fixed by the trial court at the rate of $300.00 per expert.
Aetna suspensively appeals and asserts three assignments of error:
1. The trial court erred in finding that plaintiff's temporomandibular joint (TMJ) syndrome was caused by this automobile accident.
2. The trial court erred in assessing a statutory penalty and attorney's fees against Aetna for arbitrary and capricious refusal to pay plaintiff's claim in this case.
3. The damages awarded plaintiff were excessive.
Liability is not an issue on the appeal.
Plaintiff-appellee answered the appeal seeking an increase in the award of attorney's fees and the imposition of penalties and sanctions against Aetna under LSA-R.S. 22:1220. For the following reasons, we affirm the judgment of the trial court.
In addition to the accident of January 10, 1987 here sued on, the plaintiff, Shannon Hidalgo, was also involved in an automobile accident which occurred on December 4, 1986, some five weeks before the accident giving rise to the present lawsuit. In that earlier accident, a vehicle struck the right side of Ms. Hidalgo's automobile. She claimed injuries to her neck, shoulders, lower back, right leg, and right arm, for which she received outpatient medical treatment. A *254 suit was filed on the December 4, 1986 automobile accident and, after a jury trial in August 1990, Ms. Hidalgo was awarded damages for personal injuries and lost wages.
In the present lawsuit, Ms. Hidalgo alleges that in the accident of January 10, 1987 she re-injured her neck, back and shoulders and sustained injuries to her chest and ribs from impact with the steering wheel. After three weeks of outpatient medical treatment, Ms. Hidalgo was hospitalized and placed in traction for one week because of her complaints of severe neck and back pain. Thereafter, she continued receiving outpatient care for several months.
Ms. Hidalgo saw Dr. Thomas Irwin on August 11, 1987, complaining of discomfort in the joints of her jaw. Dr. Irwin, an ear, nose and throat specialist, examined Ms. Hidalgo's jaw and believed she was experiencing temporomandibular (TMJ) syndrome. He referred her to Dr. Anthony Indovina, an oral surgeon, for further evaluation. Dr. Indovina confirmed the diagnosis that Ms. Hidalgo was suffering TMJ syndrome. Although the discs in both of Ms. Hidalgo's jaw joints were displaced, Dr. Indovina felt that the discs could be repositioned without surgery. He therefore referred Ms. Hidalgo to Dr. Dennis Booth, an orthodontist, for conservative treatment.
Dr. Booth first saw Ms. Hidalgo on September 10, 1987, at which time he x-rayed her jaws and commenced a conservative course of treatment for her TMJ syndrome. Ms. Hidalgo was initially fitted with braces on her teeth to regulate her bite in an attempt to allow the discs to re-attach in their proper positions in her jaw joints. When that procedure failed to produce favorable results, Ms. Hidalgo underwent splint therapy which involved fitting a mouthpiece over her braces to exert even greater control on her bite. That procedure also failed and Dr. Booth then resorted to intermaxillary fixation, or wiring the teeth together with the splint in place to totally immobilize Ms. Hidalgo's lower jaw. Ms. Hidalgo's teeth remained wired together for 17 days during December, 1988. Thereafter, Ms. Hidalgo underwent an MRI which indicated continued displacement of the discs in her jaws; and Dr. Booth referred her to Dr. P.J. Walters, an oral and maxillofacial surgeon. On October 4, 1989, Dr. Walters surgically reattached the discs in each of Ms. Hidalgo's jaw joints. After the surgery, Ms. Hidalgo continued wearing braces, which were still in place at the time of trial.
In its first assignment of error, Aetna contends the trial court committed error in finding that plaintiff's TMJ syndrome was caused by the January 10, 1987 automobile accident as opposed to plaintiff's earlier accident on December 4, 1986. Aetna contends plaintiff did not prove the second automobile accident was the cause in fact of the TMJ syndrome.
In multiple accident situations, whether before or after the accident at issue, a tortfeasor is liable only for the direct and proximate results of his wrongful act, including aggravation of any pre-existing injuries. Although he takes his victim as he finds him, a tortfeasor cannot be held liable for injuries not attributable to the wrongful act. In such situations, plaintiff is required to prove a causal connection between the injuries claimed and the accident by a preponderance of the evidence. Walls v. Henley, 520 So.2d 1295 (5th Cir.1988). Since the liability insurer of the tortfeasor in the present case paid plaintiff its full policy limits, Aetna's uninsured/underinsured motorist coverage assumes responsibility for any additional liability of the tortfeasor, up to the limits of the Aetna policy.
At trial, the evidence showed that plaintiff did not complain of pain or symptoms associated with TMJ syndrome after the December 4, 1986 automobile accident, but before the January 10, 1987 accident. Ms. Hidalgo testified that, prior to both accidents, she experienced "popping" and "clicking" on both sides of her jaw when she opened and closed her mouth. However, she stated that, while she did not recall experiencing jaw pain after the first accident, she was certain that she had pain in her jaws after the second automobile accident. Ms. Hidalgo described the collision impact of the second accident as being five times greater than the impact of the first accident and she noted the force with which she hit the steering wheel of her automobile in the January 10, 1987 rear-end *255 accident. When she first experienced jaw pain after the second accident, Ms. Hidalgo went to Dr. Irwin, thinking that her pain might be related to a medical condition for which Dr. Irwin had previously treated her. Dr. Irwin, however, diagnosed the pain as TMJ syndrome, a diagnosis subsequently confirmed by Doctors Indovina, Booth and Walters, as well as by x-rays and an MRI. Dr. Booth followed Ms. Hidalgo's treatment from September 10, 1987 through the time of trial. Because Dr. Booth was Ms. Hidalgo's main treating physician for the TMJ syndrome, the trial court placed emphasis on his testimony. Dr. Booth testified that the second accident was the more likely cause of Ms. Hidalgo's TMJ symptoms rather than the first accident. The trial court noted that the testimony of an orthodontist called as an expert witness by defendant was not sufficient to challenge the validity or credibility of Dr. Booth's testimony. Based on its evaluation of the evidence, the trial court found that the January 10, 1987 automobile accident caused Ms. Hidalgo's TMJ syndrome.
Our review in the present case is limited to examining whether the challenged finding of the trial court was manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Absent manifest error, the appellate court is not to disturb the finding of the trial court which has evidence before it furnishing a reasonable factual basis for its finding, based on its reasonable evaluation of credibility. Rosell v. ESCO, 549 So.2d 840 (La.1989).
After considering the evidence presented at trial, we detect no manifest error in the trial court's finding that the January 10, 1987 automobile accident was the cause in fact of Ms. Hidalgo's TMJ syndrome. Moreover, even if the first automobile accident of December 4, 1986 caused the onset of Ms. Hidalgo's TMJ symptoms as appellant argues, the second accident of January 10, 1987 aggravated that pre-existing injury, thereby rendering Aetna's uninsured/underinsured motorist coverage at risk for the TMJ syndrome experienced and reported by Ms. Hidalgo following that second accident. Walls v. Henley, supra. Accordingly, this error assignment lacks merit.
Defendant next argues that the trial court erred in assessing penalties and attorney's fees against Aetna under LSA-R.S. 22:658.[1] The trial court found that Aetna acted arbitrarily and capriciously in its handling of the insurance claim submitted by Ms. Hidalgo. Applying LSA-R.S. 22:658, the trial court imposed a penalty payment of $9,000.00, being 10% of the $90,000.00 damage award in the case, and assessed attorney's fees of $22,500.00 against Aetna and in favor of plaintiff. On appeal Aetna urges that the trial court erred in awarding a penalty and attorney's fees under LSA-R.S. 22:658 because the insurer acted with good faith in its handling of Ms. Hidalgo's claim.
A trial court's conclusion to assess penalties and attorney's fees under LSA-R.S. 22:658 is a factual determination not to be disturbed by a court of appeal in the absence of manifest error. Rogers v. Ambassador Ins. Co., 452 So.2d 261 (5th Cir.1984), writ denied, 457 So.2d 14 (La.1984).
At trial, Mr. Dean Clifton, the Aetna representative responsible for handling Ms. Hidalgo's insurance claim, testified that Aetna refused to pay plaintiff's claim because *256 the insurance company disputed the January 10, 1987 automobile accident as the cause of plaintiff's TMJ syndrome. Aetna contends that this dispute over causation constituted a good faith defense available to Aetna against Ms. Hidalgo's claim, thereby precluding an award of penalties and attorney's fees under LSA-R.S. 22:658. However, the evidence established that, prior to trial, Aetna fully investigated Ms. Hidalgo's claim and thereafter tendered to her a $10,000 payment under the $100,000 limits of the Aetna uninsured/underinsured motorist coverage. When asked about this $10,000 payment to plaintiff Mr. Clifton was unable to explain the basis for Aetna's tender of the payment, particularly in light of the denial of coverage defense asserted by the insurance company in the trial court. We find no manifest error in the trial court's determination that defendant, Aetna, acted arbitrarily and capriciously in failing to honor plaintiff's insurance claim in a timely fashion, as required by LSA-R.S. 22:658. Therefore, we uphold the trial court's award of the statutory penalty and attorney's fees against Aetna.
In her answer to the appeal, plaintiff-appellee seeks an increase in the award of attorney's fees and urges that the trial court erred in assessing the statutory penalty under LSA-R.S. 22:658 rather than LSA-R.S. 22:1220,[2] which became effective on July 6, 1990. 1990 La. Acts, No. 308, Section 1. Based on our review, we find the amount of attorney's fees awarded by the trial court both adequate and reasonable. We further conclude that the trial court correctly declined to apply the statutory penalty provisions of LSA-R.S. 22:1220 to this case. That statute imposes on the insurer a substantive duty of good faith and fair dealing in the settlement of claims. Thus, LSA-R.S. 22:1220 cannot be applied retroactively to a claim, such as plaintiff-appellee's, which arose before the statute's effective date. See Rusch v. Cook, 619 So.2d 122 (1st Cir.1993). We therefore deny the relief requested in plaintiff-appellee's answer to the appeal.
Defendant Aetna lastly challenges the damage award in this case as excessive.
The trier of fact is vested with much discretion in assessing damages; and before an award may be disturbed, the reviewing court must conclude that the trier of fact abused its discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Walls v. Henley, supra.
In its reasons for judgment, the trial court assessed the total general and special damages in the case at $200,000.00 and noted that "plaintiff should be awarded general damages for neck, back and TMJ injuries, including past and future physical and mental pain and suffering, disfigurement, past and future disability and past and future loss of enjoyment of life." Plaintiff claimed medical expenses totalling $32,789.17 in this case. Defendant alleged that a portion of those expenses were included in the medical expenses awarded to plaintiff in the lawsuit based on the December 4, 1986 automobile accident; however, the trial court found the evidence insufficient to prove that allegation. *257 After deducting the $10,000.00 previously paid by defendant to plaintiff, the trial court rendered judgment against Aetna for the $90,000.00 in policy limits remaining under its uninsured/underinsured motorist coverage. Based on our review of the facts of this case, we do not find the award of Aetna's remaining policy limits to be excessive nor do we discern any abuse of the trial court's discretion in assessing an award against Aetna in that amount.
Finally, we refer to the judgment in favor of plaintiff awarding expert witness fees as costs, fixed by the trial court at $300.00 per expert, and note that such an award of costs is subject to legal interest from the date of the judgment fixing the amount of expert witness fees. Cajun Elec. v. Owens-Corning Fiberglass, 616 So.2d 645 (La.1993).
Accordingly, we affirm the judgment of the trial court. Appellant will bear the costs of the appeal.
AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM
Plaintiff Hidalgo's application for rehearing argues we should have awarded interest on the award of penalties and penalty attorney's fees from the date of judicial demand. We disagree.
The amount of penalties and penalty attorney's fees due under R.S. 22:658 is not ascertainable until awarded by the court. Accordingly, interest will run only from the date of judgment. Economy Auto Salvage, Inc., v. Allstate Insurance Company, 499 So.2d 963 (3rd Cir.1986) writ denied. See also Francis v. Travelers Ins. Co., 581 So.2d 1036 (1st Cir.1991).
Our opinion is thus amended to reflect that legal interest on penalties and penalty attorney's fees is awarded from the date of judgment. As amended, our original judgment is reinstated and the application for rehearing denied.
Decree amended and rehearing denied.
NOTES
[1] At the time of the January 10, 1987 automobile accident, LSA-R.S. 22:658 read in pertinent part as follows:

"A. All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
B. (1) Failure to make such payment within sixty days after receipt of such proofs and demands therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount."
[2] In pertinent part, LSA-R.S. 22:1220 provides:

"A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
* * * * * *
(5) Failing to pay the amount of any claim due within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages which claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater ..."