hBROWN, J.
Plaintiff, Reverend Bruce Lee Goss, on behalf of the New Birth Temple Church of God in Christ (“New Birth”), purchased a vacant, wood-framed building once used as a union hall located at 1314 Milam Street in Shreveport, Louisiana.[1] Prior to the purchase, the building had been declared a nuisance by the City of Shreveport and ordered rehabilitated or demolished. On June 4, 1996, plaintiff obtained from Penn-America Insurance Company (“Penn-America”) a commercial property policy for the building. Nineteen days later, on June 23, 1996, the building was destroyed by a fire. Investigators concluded that the fire was intentionally set. At the time of the fire, the building was not being used and did not have electricity or water.
John Frazier, an adjustor for Delta Claims Service, Inc. (“DCS”), appraised the property loss at $4,703,08. The policy had a $500 deductible and plaintiff was offered $4,203.08 in settlement of the claim. On September 17, 1996, plaintiff signed a sworn statement of proof of loss acknowledging that his claim was for $4,203.08, and he was paid this amount. Thereafter, on December 23,1997, plaintiff filed suit against DCS, Mr. Frazier and Penn-America, alleging that the building was insured for $40,000 and that Mr. Frazier misrepresented the policy terms to him during their discussion of the claim.
Defendants filed a motion for summary judgment with attachments. The motion was granted and plaintiff appeals. We affirm.

Discussion

Plaintiff claims that he was led to believe that the building was covered by an “agreed value” policy worth $40,000. According to plaintiff, he was misled when he accepted the $4,203.08 which he believed was only a partial settlement. [¡¿He asserts that summary judgment was not proper because factual issues concerning what he was told when he purchased the policy and when he accepted the money were unresolved.
Summary judgments are governed by La. C.C.P. art. 966, which was amended in the 1996 and 1997 legislative sessions. See Acts 1996, 1st Ex.Sess., No. 9, and Acts 1997, No. 483. The effect of these amendments is to establish that summary judgment is now favored. Indeed, the summary judgment procedure is today designed to secure the just, speedy and inex *1212 pensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2); Ledent v. Guaranty National Insurance Co., 31,346 (La.App.2d Cir.12/28/98), 723 So.2d 531; NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,-555 (La.App.2d Cir.08/21/96), 679 So.2d 477.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Although the burden of proof remains with the mover, when a motion is made, an adverse party may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing a genuine issue for trial. La. C.C.P. arts. 966(C)(2), 967.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.07/05/94), 639 So.2d 730; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).
13In order to recover for negligent misrepresentation, plaintiff must establish a legal duty on the part of the defendant to supply the correct information to the plaintiff; a breach of this duty; and damages to the plaintiff as a result of his justifiable rebanee upon the misrepresentation. Commercial National Bank v. Audubon Meadow Partnership, 566 So.2d 1136 (La.App. 2d Cir.1990).
In support of their motion for summary judgment, defendants submitted the insurance policy, which shows clearly that it is an. “actual cash value” policy. The provisions indicate that the building and most of its contents were covered and that the limit of this coverage was $40,000. The policy does not state that a payment of $40,000 would be made for the loss of the building. To the contrary, the policy states that the insured would be compensated for the value of the property that was lost or damaged up to a maximum of $40,000.
Defendants also attached the affidavits of Ms. Spencer and Mr. Frazier, as web as the sworn proof of loss signed by plaintiff. Ms. Spencer stated that plaintiff did not request to purchase an “agreed value” policy and that she did not issue such a policy. Mr. Frazier stated that he explained the policy language and submitted a property appraisal to plaintiff. In signing the proof of loss, plaintiff acknowledged that his actual claim was for $4,203.08.
The affidavits and documents submitted by defendants show that plaintiff has been paid what he was due under the policy. They further indicate that neither Ms. Spencer nor Mr. Frazier misrepresented the terms of the policy during their discussions with plaintiff.
On the other hand, plaintiff merely relied upon the bare allegations of his petition and appellate brief. Because plaintiff submitted nothing that would indicate his ability to carry his burden of proof at trial, we find no error in the trial court’s grant of summary judgment in favor of defendants.

14Conclusion

For the foregoing reasons, the trial court’s judgment is AFFIRMED. Costs are assessed to plaintiff-appellant.

. The building was bought approximately three months before the fire from the Pipeline Construction Local 692 for $3,500 ($500 down and the remainder to be paid in 14 equal installments).