Jack McCORD, Daniel Martin, and Frances Martin, individually and as representatives of all persons similarly situated, Plaintiffs,

v.

**MINNESOTA MUTUAL LIFE INSURANCE COMPANY,** Defendant.

MDL No. 1186.
No. CIV. 98–2656(DSD/JMM).

United States District Court,
D. Minnesota.

April 10, 2001.

Karl L. Cambronne, Chestnut & Cambronne, Minneapolis, MN, John J. Stoia, Jr., Milberg, Weiss, Bershad, Nynes & Lerach, San Diego, CA, Glen DeValerio, John P. Zavez, Berman, DeValerio & Pease, Boston, MA, Debra B. Hayes, Christopher A. Kesler, Fleming & Associates, Houston, TX, Jules B. LeBlanc III, Jody E. Anderman, LeBlanc, Maples & Waddell, Baton Rouge, LA, for plaintiffs.

Garold M. Felland, Minnesota Mutual Life Insurance Company, St. Paul, MN, James F. Jorden, Waldemar J. Pflepsen, Jr., Jorden, Burt, Boros, Cicchetti, Berenson & Johnson, Washington, D.C., Wayne S. Moskowitz, Gary J. Haugen, Maslon, Edelman, Borman & Brand, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

## BACKGROUND

In July 1997, plaintiff Jack McCord ("McCord") filed this action in Louisiana State Court against defendant Minnesota Mutual Life Insurance Company ("Minnesota Mutual") and one of its insurance sales agents, Earl Venable ("Venable").[1] On August 22, 1997, defendants removed this case to United States District Court in the Western District of Louisiana. In February 1998, McCord amended the petition to add Daniel Martin and Frances S. Martin (the "Martins") as additional

---

**1.** Venable was a defendant in state court but was dismissed by plaintiffs after he filed a motion to dismiss. He is thus not a party to the present action.

named plaintiffs. On July 6, 1998, the clerk of the Multidistrict Litigation ("MDL") Panel issued a conditional transfer order transferring the case to this court for coordinating MDL pretrial proceedings.[2] On August 25, 2000, this court denied plaintiffs' motion for remand to Louisiana state court.

Plaintiffs are all citizens and residents of the State of Louisiana. Defendant Minnesota Mutual is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Defendant sells many types of life insurance policies to individuals, groups and businesses. Plaintiffs in this action seek compensatory and equitable relief for defendant's alleged fraudulent conduct and purported deceptive sales scheme in the marketing and sale of "vanishing premium" policies.[3] Plaintiffs allege that defendant knew its representations were not true and that premium obligations would not "vanish" when promised. This is one of the many actions brought nationwide against major insurance companies to recover damages allegedly sustained when the purported promises of "vanishing" premiums failed to materialize.[4]

According to defendant, the policies that McCord and the Martins purchased from Minnesota Mutual were adjustable life policies, not ordinary whole life insurance. (*See* Aff. of Richard D. Lee ¶ 4.) Unlike ordinary whole life insurance, in which an insured pays a set premium for the life of the contract for a guaranteed death benefit, adjustable life policies are "adjustable" because the insured can choose to modify both the face amount of coverage and the premium. (*Id.*) For example, the policy owner can specify the length of protection along with a face amount and, based on those specifications, an annual premium amount is calculated that fits that choice. (*Id.*) Choices can be adjusted, which results in corresponding adjustments to the annual premium. (*Id.*) Adjustable life is characterized as either "term" or "whole"

---

**2.** On August 13, 1999, this court denied class certification for the lead MDL case, *Parkhill v. Minnesota Mut. Life Ins. Co.*, 188 F.R.D. 332 (D.Minn.1999), and on August 25, 2000, granted Minnesota Mutual's motions for summary judgment in *Parkhill* (Civ. No. 97–515 (D.Minn. Aug. 25, 2000)) and in *Semanko v. Minnesota Mut. Life Ins. Co. Civ.*, another vanishing premium case. Civ. No. 97–516 (D.Minn. Aug. 25, 2000).

**3.** A "vanishing premium" policy is one where, after a certain number of premium payments, the policy itself generates sufficient income through dividends and interests to pay any additional premiums due. In other words, premiums paid in the initial years of a policy are supposed to generate sufficient value to pay all future premiums in later years, so that future premiums, in a sense, "vanish." The assumption that premiums will vanish depends on, among other factors, mortality experience, expenses, dividends and associated interest rates. A change in any of these variables can affect the date by which premiums will "vanish."

**4.** *See, e.g., Cunningham v. Massachusetts Mut. Life Ins. Co.*, No. 4:95CV417–B–B, 1996 WL 901285, 1996 U.S. Dist. LEXIS 21408 (N.D.Miss. July 3, 1996); *Halter v. Allamerica Financial Life Ins. & Annuity Co.*, 98–0718 Section "R", 1998 WL 516109, 1998 U.S. Dist. LEXIS 13250 (E.D.La. Aug. 19, 1998); *Hayden v. State Farm Fire & Cas. Co.*, No. 95–3614 Section C(1), 1996 WL 80094, 1996 U.S. Dist. LEXIS 1977 (E.D.La. Feb. 22, 1996); *Kiefer v. State Farm Mut. Auto. Ins. Co.*, No. 95–2674 Section T(3), 1999 WL 147673, 1999 U.S. Dist. LEXIS 3220 (E.D.La. Mar. 11, 1999); *Kiehl v. Jackson Nat'l Life Ins. Co.*, No. C–95–2645 FMS, 1996 WL 241788, 1996 U.S. Dist. LEXIS 6966 (N.D.Cal. Apr. 30, 1996); *Morris v. Manufacturers Life Ins. Co.*, No. EV 95–142–C H/H, 1997 WL 534156, 1997 U.S. Dist. LEXIS 12947 (S.D.Ind. Aug. 6, 1997); *Solomon v. Guardian Life Ins. Co.*, No. 97–2011, slip op., 1998 WL 547865 (3d Cir. June 30, 1998); and SE80 ALI–ABA 133, "Recent Developments in Vanishing Premiums Litigation."

life depending on how long the plan of insurance will last on a guaranteed basis with the face amount and premium chosen. (*Id.*) Minnesota Mutual's Adjustable Life III policy ("the policy") is a participating policy which entitles the policy owner to share in the company's divisible surplus. (*Id.* ¶ 5.) The divisible surplus attributable to policy owners, if any, is determined annually by Minnesota Mutual and is paid as a dividend at the end of each policy year. (*Id.*)

The policies owned by plaintiffs contained an integration clause which defines the scope of the policy and informs the policy owner that the agent is not authorized to vary the contractual terms. (*Id.* at ¶ 7.) The policy specifically states, "[y]our policy, or any reissue of it, contains the entire contract between you and us." (*Id.*) The contract "includes the initial application and all subsequent applications to reissue your policy ..." and changes or waivers must be "made in writing by us and signed by our president, a vice president, our secretary, or an assistant secretary. No agent or other person has the authority to change or waive any provisions of your policy." (*Id.*) The policies also provided a "free look" period of 20 days during which the policy owner is entitled to cancel the policy for any reason and receive a full refund. (*Id.* at ¶ 6.)

McCord asserts that in January 1987, agent Venable represented to him that the Minnesota Mutual Adjustable Life III policy required just seven annual premium payments after which no further out-of-pocket expenses would be required to keep the policy in force for the remainder of his life.[5] (Amended Petition ¶ 27–28; McCord

Dep. I at 55, 101–102, 138.) McCord claims that Venable told him that the dividends generated from those seven payments would pay all future premiums on the policy and provide a $250,000 death benefit. (*Id.* at 138, 146–148.) Although McCord concedes that Venable never directly guaranteed that dividends would pay all future premiums, he insists that a policy illustration used by Venable at the point of sale made such a representation. (*See* McCord Dep. I at 102–104, 158.) The policy illustration to which McCord refers stated in part:

> This is an illustration only and not a contract.... Illustrative dividends are based on current mortality experience and an assumed interest rate of 9.0%. The current interest rate is 9.0%. Dividends illustrated are based on the assumptions above and cannot be guaranteed.

(Carpenter Aff. Ex. D–4.) Furthermore, McCord admits that he understood the importance of that language. (*See* McCord Dep. I at 145.) The illustration also stated, "initial guaranteed plan of INS. term to 61," identifying the policy as "term" coverage to age 61. (Carpenter Aff. Ex. D–4.)

On or about January 20, 1987, McCord was issued Minnesota Mutual policy No. 1–715–199, providing a death benefit of $250,000. (Lee Aff. Ex. A.) The policy information page of the McCord policy clearly states that it provides level premium term insurance to age 61. (*Id.*) On its face the policy provided guaranteed death benefit coverage for only a specified period of time which was, defendant asserts, in

---

5. Defendant asserts that McCord is no novice to the business world or insurance matters since he has, among other things, owned his own business, bought and sold real property, conducted title searches, executed and car-

ried out business contracts and acknowledges that prior to purchasing the Minnesota Mutual policy, he has owned at least seven other life insurance policies. (*See* McCord Dep. I at 14–25, 76.)

accord with the illustration that McCord saw prior to the sale. (*Id.*)

McCord admits that in neither the policy nor the illustration was there any direct indication that only seven premium payments would be required to keep coverage in force for the remainder of his life. (McCord Dep. I at 179–180, II at 261–263.) McCord acknowledges that he never fully read the policy. (*Id.* at 151–152, 187, 200–201.) McCord also received annual policy review ("APR") statements. McCord acknowledges that he knew from these APR statements that the actual declared dividends in the policy were less than the dividends projected by the sales illustration. (*Id.* at 59, 64, 155, 217.) Moreover, on January 20, 1990, the policy was reissued with language clearly stating that premiums were required through January 1995, two years longer than Venable's alleged representation in 1987. (*Id.* at 221–225.)

Similarly, the Martins assert that in March 1987, agent Venable persuaded them to purchase a Minnesota Mutual Adjustable Life III policy by representing, among other things, that the policy would require only ten annual premium payments after which no further out-of-pocket expenses would be required.[6] (Amended Petition ¶ 52; D. Martin Dep. at 62–63.) The Martins further claim that, when they were sold the policy in 1987, they understood it to be a "whole life" policy that would provide death benefit coverage for the rest of the Martins' life. (*Id.*)

The Martins also concede that Venable never directly guaranteed that dividends would pay all future premiums on the policy. (D. Martin Dep. at 63; F. Martin Dep. at 135.) As with McCord, Venable used a sales illustration that clearly stated: "dividends illustrated are based on the assumptions above and cannot be guaranteed." (Carpenter Aff. Ex. D–38.) Daniel Martin also admits that he did not "read all the information that was on the chart that Mr. Venable showed him." (D. Martin Dep. at 173–174.)

On or about March 3, 1987, the Martins were issued Minnesota Mutual Policy No. 1–711–823 with a face value of $1,000,000. (Lee Aff. Ex. B.) The policy information page clearly identifies the policy as providing "term" coverage of "level premium term insurance to age 57." (*Id.*) Moreover, the same page explicitly states that "this agreement terminates on March 3, 2003." (*Id.*) Therefore, defendant's assert that at the time the policy was issued, the Martins were on notice that it provided guaranteed coverage for a specified period of time, not for the duration of Mr. Martin's life. The record also reflects that the Martin policy was reissued three times in 1990, 1993, and 1996. (Carpenter Aff. Exs. D–43, D–48, D–52.) Each time it was reissued, the policy information page expressly reiterated that the plan provided a term of insurance to a specified age. (*Id.*) The Martins also admit that they never fully read the policy or the APR statements issued by defendant. (D. Martin Dep. at 180–183, 211–214, 223–226, 246.) [7]

Plaintiffs bring the present suit alleging that they were sold these life insurance

---

6. The record also supports defendant's contention that Daniel Martin is an experienced businessman. He is president of a company in which he owns an interest, interacts frequently with lawyers and accountants, and has owned several life insurance policies before purchasing the Minnesota Mutual policy. (D. Martin Dep. at 23–39, 49–51.)

7. The Martins do not recall ever receiving a copy of their policy and admit they made no effort to obtain one or contact their insurance agent or the defendant. (D. Martin Dep. at 13–14, 166–168; F. Martin Dep. at 14–15, 71–77.)

policies on the basis of alleged misrepresentations. Plaintiffs claim that Venable induced them to buy the policies with assurances that, after a limited number of premium payments, no further premiums would be required to maintain insurance coverage at a specified death benefit for the life of the insured. Plaintiffs specifically contend that the alleged representations made by Venable at the point of sale gave rise to five causes of action under Louisiana law: (1) unfair or deceptive acts; (2) breach of duty of good faith and fair dealing; (3) negligent misrepresentation and omissions; (4) breach of contract; and (5) breach of fiduciary duty. Defendants bring the present motion asserting that they are entitled to summary judgment as a matter of law since plaintiffs' claims are time-barred, and alternatively, because all claims fail on their merits. For the reasons stated, the court grants defendant's motion and dismisses all of plaintiffs' claims with prejudice.

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).

A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *See id.* at 250, 106 S.Ct. 2505. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *See id.* at 322–23, 106 S.Ct. 2548.

### B. Choice of Law

■ The initial issue this court must resolve is which law to apply. Defendant argues that Louisiana law applies, while plaintiffs assert that Minnesota law should apply.[8] "In multidistrict litigation that has been transferred to a central forum for coordinated or consolidated pretrial proceedings, the transferee federal district court must apply the substantive state law of the transferor district, including its choice of law rules." Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 112.07(2)(b) (3d ed.1990). *See also Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)("the transferee district court must be obligated to apply the state law that would have been applied if there had been

---

8. Plaintiffs initially brought this suit in Louisiana state court. Plaintiffs moved this court for

remand to Louisiana state court. That motion was denied on August 25, 2000.

no change of venue"). Thus, since this case was transferred from Louisiana District Court, Louisiana choice of law must control.

■ Under Louisiana's choice of law rules, Louisiana law governs this action including the relevant period of prescription for each of plaintiffs' claims.[9] *See Jagers v. Royal Indem. Co.*, 276 So.2d 309, 311 (La.1973). A recent decision by the Louisiana Court of Appeals, in a nearly identical "vanishing premium" case, came to the same conclusion. *See Bergeron v. Pan Am. Assur. Co.*, 731 So.2d 1037 (La. Ct.App. 4th Cir.1999). Louisiana courts also hold that the domicile of the parties to the action is one of the key factors for the court to consider in making its determination. *See Levy v. Jackson*, 612 So.2d 894,

896 (La.App.1993). The reasonable expectation of the parties is also to be considered. *See id.* at 897.

In this case, the plaintiffs are Louisiana residents. The policies at issue were sold in Louisiana by defendant's agent conducting business in Louisiana. The purported actions constituting the breach of contract and the alleged torts occurred in Louisiana. Similarly, plaintiffs' alleged damages were incurred in Louisiana. Minnesota has no connection to the dispute other than the fact that defendant maintains its corporate headquarters there. Thus, the court concludes that since all pertinent events occurred in Louisiana, the reasonable expectations of all parties must be that Louisiana law should apply.[10] Moreover, Louisiana has an interest in protect-

9. Louisiana Civil Code article 3537 governs contract disputes and article 3542 tort claims. Article 3537 specifically states that, "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue, ... determined by evaluating ... (1) the pertinent contacts of each state of the parties and the transaction, including the place of negotiation, formation, and performance of the contract, location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) ... the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and protecting one party from undue imposition by the other." La. Civ.Code Ann. art. 3537. Article 3542 states that a tort "is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied ... determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered..." La. Civ.Code Ann. art. 3542.

10. Plaintiffs specifically argue that Article 3537 pertaining to contract claims requires application of Minnesota law because the insurance policy was initially drafted in Minnesota. The court is not persuaded by this argument. Article 3537 addresses the formation and performance of a contract rather than the location of the drafting of an underlying policy. *See* La. Civ.Code Ann. art. 3537. Plaintiffs also argue that Article 3547 should be applied. Article 3547 covers exceptional cases that might lead to an "irrational result." (Pl. Mem. at 6.) *See* La. Civ.Code Ann. art. 3547. The court is not persuaded by this argument since the court finds nothing irrational in applying the law of the jurisdiction where all plaintiffs are domiciled, purchased the policies at issue, initiated suit in state court and unsuccessfully moved to have this case remanded. *See id.* Plaintiffs also argue that this court should follow the choice of law determination as made in *Parkhill v. Minnesota Mut. Life Ins. Co.*, Civil No. 97–515 (D.Minn. August 25, 2000). In *Parkhill* it was held that to the extent that the law of Minnesota and Florida differed, the court would apply the law of plaintiff's domicile. The court also concluded that since there was no material difference in applying Minnesota rather than Florida law, it could apply Minnesota law to the extent it did not affect the outcome of the case. *Parkhill*, Civil No. 97–515 at 11.

ing both consumers of insurance products and those engaged in the insurance business residing in the state.[11] Louisiana law will thus be applied.

### C. Prescription: Claims Fail As Time-Barred

Defendant contends that the present claims are time-barred and should be dismissed since the prescriptive period has run under Louisiana law.

■■■ Because statutes governing prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished, when two possible constructions exist the construction which favors maintaining as opposed to barring an action is often adopted. *See Asbestos v. Bordelon, Inc.*, 726 So.2d 926 (La.Ct.App. 4th Cir., 1998). Thus, the party pleading prescription ordinarily bears the burden of proof. *See Brown v. Am. Nat'l Prop. & Cas. Co.*, 720 So.2d 1278, 1279 (La.Ct.App. 4th Cir., 1998). However, where the face of the petition reveals that the period of prescription has run, the burden of proof shifts to the plaintiff to show that it has not run. *Id.*

### 1. Tort Claims Time-Barred

■■■ Defendant asserts that plaintiffs' several tort claims are time-barred. Loui-siana law establishes a one-year prescriptive period that begins running on the date of the injury or damage. La. Civ.Code Ann. art. 3492. *See Smith v. Remodeling Serv., Inc.* 648 So.2d 995, 999–1000 (La. Ct.App. 5th Cir.1994). Specifically, prescription in actions arising ex delicto commences at "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." *Bergeron*, 731 So.2d at 1042–43 (quotations omitted). Defendant argues that plaintiffs had information sufficient to excite their attention and prompt further inquiry as early as 1987 and certainly well before July 1996, one year prior to the filing of this lawsuit.

■■■ The record supports defendant's position. The court concludes that plaintiffs had information sufficient to excite their attention and prompt further inquiry when the policies were issued and allegedly differed from what plaintiffs claim were represented to them by defendant.[12] Furthermore, all plaintiffs admit that they received APR statements from defendant beginning in 1988. These statements were also sufficient to put plaintiffs on notice that the actual dividends they were receiving were inconsistent with those that had been allegedly promised.[13]

---

**11.** The court also notes that even if Minnesota law were applied the court would inevitably have reached the same result regarding the merits of plaintiffs' claims. *See, e.g., Parkhill v. Minnesota Mut. Life Ins. Co.*, Civ. No. 97–515 (D.Minn. Aug. 25, 2000); and *Semanko v. Minnesota Mut. Life Ins. Co. Civ.*, Civ. No. 97–516 (D.Minn. Aug. 25, 2000).

**12.** The record reflects that McCord received his policy in January 1987 and the Martins should have received their policy in March 1987. Although the Martins claim to have not received a copy of their policy at the time it was issued, they are still deemed to have constructive knowledge of the terms since Louisiana law provides that "[a]ctual or phys-ical delivery of a policy is not necessary to effectuate the contract of insurance if it is otherwise completed." *Coco v. S. United Fire Ins. Co.*, 682 So.2d 1014, 1019 (La.Ct.App.3d Cir.1996). The court concludes that there was no reasonable basis for the Martins not to request a copy of the policy since the record reflects that they were aware that they did not have the policy at the time they should have received it nine to ten years before the filing of this lawsuit. (F. Martin Dep. at 71–75.)

**13.** Martin admitted that had he read the annual policy statements, they would have excited his attention as early as 1989. (D. Martin Dep. at 212–214.) McCord also admits tracking annually the actual dividends against

The court therefore concludes that plaintiffs knew, or should reasonably have known, of the injuries they allege well in advance of one year prior to the commencement of this lawsuit. All of the tort claims are thus time-barred and must be dismissed with prejudice.

## 2. Contract Claims Time–Barred

■ Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing are subject to a ten-year prescriptive period under Louisiana law. La. Civ.Code Ann. art. 3499. Defendant asserts that plaintiffs knew or should have known that they had a reasonable basis to pursue a claim more than ten years before filing this lawsuit since the policies, according to plaintiffs, expressly contradicted the oral promises allegedly made to them at the point of sale and since plaintiffs had actual or constructive notice of the terms of the insurance contract no later than March 1987.[14]

The court agrees. The record reflects that plaintiffs' claims had expired prior to the filing of the suit. According to plaintiffs' allegations of breach, the plaintiffs knew or should reasonably have known of their cause of action as of March 1987. See Bergeron, 731 So.2d at 1042. Under the facts of this case, the inaction of plaintiffs was not reasonable. See id. at 1043. Since the amended petition was filed after the applicable period of prescription under

Louisiana law had expired, all of plaintiffs' claims are time-barred.

## D. Failure of Claims on the Merits

Even if plaintiffs' claims were not time-barred, the court would be required to grant defendant summary judgment on the basis that each of plaintiffs' claims fail as a matter of law.

## 1. Breach of Contract Claim Fails

Plaintiffs allege that defendant breached the insurance contract when premiums failed to "vanish." Plaintiffs fail, however, to identify a specific provision of their written policies that was breached.[15] See Bergeron, 731 So.2d at 1045.

■ Since plaintiffs cannot show that any express provision of the written policy was breached, plaintiffs' claims are solely predicated upon the alleged oral representations made by Agent Venable and the illustration he used at the point of sale. This argument fails as a matter of law since any oral representations, as alleged here, are barred by the parol evidence rule. See La. Civ.Code Ann. art. 1848. The parol evidence rule in Louisiana provides that "testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature." Id.; Patterson v. City of New Orleans, 686 So.2d 87, 90 (La.Ct.App. 4th Cir.1996) (extrinsic evidence may not be admitted to negate or

those allegedly promised by Agent Venable beginning in January 1988 and waiting eight years before inquiring about the policy's purported underperformance. (McCord Dep. at 59, 64, 155, 177.) McCord also admits that he was aware in January 1994 that he was making annual premium payments beyond the seven he allegedly was told would be required. (McCord Dep. at 163.) Furthermore, on January 20, 1990, McCord's policy was reissued with language clearly stating that premiums were required through Janu-

ary 1995, two years longer than allegedly was represented at the point of sale.

14. See, supra, n. 12.

15. Plaintiffs concede that had they read their policies, they would have known that a level of dividends were not guaranteed. (McCord Dep. at 151–152, 187, 200–201; D. Martin Dep. at 223–224, 283; F. Martin Dep. at 148–149.)

vary the contents of a written contract). Furthermore, it is undisputed that the contract contains a clear and unambiguous merger and integration clause.[16]

Plaintiffs attempt to avoid the parol evidence rule by arguing that the contract is ambiguous "because it does not say whether premiums will be paid out of cash value or by the policy holder." (Pls.' Mem. at 17.) And since an ambiguity exists, plaintiffs argue, parol evidence may be considered by the court. The court, however, is not persuaded by this argument since it specifically finds that the contract is unambiguous.

This holding is based upon Louisiana law concerning the interpretation of insurance contracts which provides:

[C]ourts are guided by certain principles of construction and should interpret insurance policies the same they do other contracts by using the general rules of contract interpretation as set forth in our Civil Code ... When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent. La. Civ.Code art. 2046.... Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have required a technical meaning. La. Civ.Code art.2047 [citations omitted]. Courts lack authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. [Citations omitted]... An insurance contract is construed as a whole and each provision of the policy must be interpreted in light of the other provisions so that each is given meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions. La. Civ.Code art.2050.

*Peterson v. Schimek*, 729 So.2d 1024, 1028–1029 (La.1999). Under the rules of construction in Louisiana, the court may not create an ambiguity where none exists or make a new contract when the terms express sufficient clearness of the parties' intent. *See Bergeron*, 731 So.2d at 1045.

■ Any enforcement of the alleged promises made at the point of sale would violate the parol evidence rule and must be disregarded. That is, even if Venable made the statements as alleged, these statements cannot alter the express terms of the contract under the parol evidence rule.[17] *See id.* at 1044–1045 (reaching the same conclusion).[18] The court thus con-

---

**16.** The policy's clear and unambiguous merger and integration clause provided:

Your policy, or any reissue of it, contains the entire contract between you and us. This includes the initial application and all subsequent applications to reissue your policy ... No change or waiver of any of the provisions of this policy will be valid unless made in writing by us and signed by our president, a vice president, our secretary or an assistant secretary. No agent or other person has the authority to change or waive any provisions of your policy.

(Lee Aff. Ex. C at 4.)

**17.** The court also concludes that even if parol evidence were allowed in the form of the sales point illustration, the clear and unequivocal disclaimer at the bottom of this document would similarly defeat plaintiffs' claim for breach of contract.

**18.** An additional bar to plaintiffs' claim is found in La.Rev.Stat. Ann. § 22:628. This statute provides that the terms of insurance contracts cannot be modified on the basis of an agent's oral representations. "No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance." La.Rev.Stat. Ann. § 22:628. *See also Marsh v. Reserve Life*

cludes that plaintiffs cannot maintain their breach of contract claim and defendant is entitled to summary judgment.

### 2. Unfair and Deceptive Violations Claim Fails

▮ Plaintiffs also allege that defendant engaged in practices that were "unfair, deceptive and misleading in selling and issuing life insurance policies." (Amended Petition ¶ 63.) This claim fails as a matter of law because there is no recognized private cause of action in Louisiana for "unfair or deceptive acts against an insurer." *See Travelers Indem. Co. v. Powell Ins. Co.*, No. Civ. A. 95–4188, 1996 WL 578030, *3, 1996 U.S. Dist. LEXIS 15041, *1, *11 (E.D.La. Oct. 4, 1996) ("Louisiana has two statutory schemes prohibiting unfair or deceptive trade practices: Louisiana Unfair Trade Practices and Consumer Protection Act [citation omitted] and the Insurance Code [citation omitted]. Neither statute provides a private cause of action against an insurance company."). By its express terms, the Louisiana Unfair Trade Practices Act does not apply to actions or transactions subject to the jurisdiction of the insurance commissioner. *See id.*, (*quoting* La.Rev.Stat. § 51:1406(1)). Since the acts here are subject to the jurisdiction of the Louisiana Insurance Commissioner, they are outside the scope of the Louisiana Unfair Trade Practices Act. *See also Hayden v. State Farm Fire & Cas. Co.*, No. 95–3614, 1996 WL 80094, 1996 U.S. Dist. LEXIS 1977 *1, *3 (E.D.La. Feb. 22, 1996); *West v. Fireman's Fund Ins. Co.*, 683 F.Supp. 156, 157 (M.D.La.1988) (plaintiff cannot bring claim against insurer for unfair trade practices under the Louisiana Unfair Trade Practices Act).

Plaintiffs' claim also fails under the Louisiana Insurance Code ("LIC") since there is no private cause of action under the LIC. La.Rev.Stat. Ann. § 22:1211–1220. *See Travelers Indem. Co.*, 1996 WL 578030 at *4, 19996 U.S. Dist. LEXIS 15041 at *13–14. Enforcement of the LIC is the providence of the Insurance Commissioner, not the plaintiffs' bar:

> Under Title 22, there is a detailed enforcement mechanism by which the Commissioner of Insurance is empowered to investigate allegations of unfair methods of competition or unfair or deceptive acts in the insurance business, to hold hearings, to issue cease and desist orders, to assess monetary penalties against violators, and to suspend and revoke the license of violators.

*Clausen v. Fid. & Deposit Co. of Maryland*, 660 So.2d 83, 86 (La.Ct.App. 1st Cir.1995). *See also Travelers Indem. Co.*, 1996 WL 578030 at *4, 1996 U.S. Dist. LEXIS 15041 at *14 ("[n]o provision of Louisiana law explicitly confers a private right of action on consumers to enforce the unfair trade practice provisions of the Insurance Code."). The court thus concludes there is no basis under Louisiana law for plaintiffs' claim of unfair or deceptive acts and are dismissed with prejudice.[19]

### 3. Failure of Good Faith and Fair Dealing Claims

▮ The court also concludes that plaintiffs fail to state a claim pursuant to the LIC for breach of the duty of good

---

*Ins. Co.*, 516 So.2d 1311, 1314 (La.Ct.App.2d Cir.1987) ("[w]ith respect to representations by an insurance agent, the jurisprudence has uniformly held that representations of an agent cannot enlarge or extend coverage beyond what is provided for in the policy.").

19. Plaintiffs appear to concede this determination since they do not specifically address or brief this issue first raised in defendant's motion.

faith and fair dealing.[20] *See* La.Rev.Stat. Ann. § 22:1220. The LIC statute does not apply to conduct that predates by more than three years its effective date of July 6, 1990. *See Manuel v. Louisiana Sheriff's Risk Mgmt. Fund,* 664 So.2d 81, 84–87 (La.1995); *Premium Finance Co., Inc. v. Employers Reinsurance Corp.,* 761 F.Supp. 450 (W.D.La.1991).[21] Furthermore, the conduct complained of is not among the acts expressly proscribed by the statute. *See* La.Rev.Stat. Ann. § 22:1220(B). Louisiana courts have expressly held that "only the commission of the specific acts listed in [La.Rev.Stat. § ] 22:1220(B) can support a private cause of action for breach of the statute." *Theriot v. Midland Risk Ins. Co.,* 694 So.2d 184, 193 (La.1997). The acts alleged in plaintiffs' Amended Petition are not listed. *See* La.Rev.Stat. Ann. § 22:1220(B). *Risinger v. State Farm Mut. Auto. Ins. Co.,* 711 So.2d 293, 295–296 (La.Ct.App.2d Cir.1997) (affirming summary judgment where alleged conduct did not fall within enumerated conduct under the statute).[22]

### 4. Failure of Claim For Misrepresentation

▮▮▮▮▮ Plaintiffs' claim for negligent misrepresentation also fails because the alleged statements by Agent Venable do not rise to the level of misrepresentation. Under Louisiana law, claims asserting negligent misrepresentation must establish: (1) a legal duty on the part of the defendant to supply correct information, (2) a breach of that duty, and (3) that the breach caused damage to the plaintiff as a result of the plaintiff's justifiable reliance upon the misrepresentation. *See New Birth Temple Church of God in Christ v. Delta Claims Serv., Inc.,* 738 So.2d 1210, 1212 (La.Ct.App.2d Cir.1999). Negligent misrepresentation cannot be predicated upon unfulfilled promises or statements as to future events. *See Adams v. Kaiser Aluminum,* 685 So.2d 269, 272 (La.Ct.App. 5th Cir.1996). That is, mere forecasts or predictions of future performance generally cannot support a claim for negligent misrepresentation. *See id.* The court determines that the alleged misrepresentations here, even if made, amount to nonactionable promises or predictions of future performance. The court additionally concludes that plaintiffs fail to show the essential element of justifiable reliance on the claim of misrepresentation. *See Scott v. Bank of Coushatta,* 512 So.2d 356, 362 (La.1987) ("[i]n the case of misrepresentation, relief is denied where the purchaser had every reasonable opportunity to be-

**20.** The court also concludes that this statute does not apply because the statute on its face is limited to conflicts arising from the *payment* of claims. *See* La.Rev.Stat. Ann. § 22:1220(A); *Hidalgo v. Old Hickory Ins. Co.,* 630 So.2d 252, 256 (La.Ct.App. 5th Cir.1993).

**21.** It is undisputed that the alleged conduct predates July 6, 1990, the effective date of the statute by more than three years, since any of the alleged misrepresentations and omissions with regard to plaintiffs' claims occurred prior to the issuance of their policies on January 4, 1987, and March 3, 1987, respectively. Thus, since the statute cannot be applied retroactively, plaintiffs' claims fail. This determination comports with Louisiana law. *See Manuel v. Louisiana Sheriff's Risk Manage-*

*ment Fund,* 664 So.2d 81, 84–87 (La.1995). The fact that any alleged bad faith may have continued past the effective date of La.Rev. Stat. § 22:1220 is not enough to make the statute applicable. *Kiefer v. State Farm Mutual Auto Ins. Co.,* 1999 WL 147673, *1, *6, 1999 U.S. Dist. LEXIS 3220 *1, *20 (E.D.La. March 11, 1999). Thus, the court concludes that the application of La.Rev.Stat. § 22:1220 to defendant's alleged conduct is impermissible since it is a retroactive application of the statute.

**22.** Plaintiffs also appear to concede this conclusion since they similarly do not specifically address or brief this issue.

come informed about the facts and failed to do so."). The court therefore concludes that defendant is entitled to summary judgment on the misrepresentation claims as a matter of law.

### 5. Failure of Claims For Breach of Fiduciary Relationship

 Plaintiff's claim for breach of fiduciary duty also fails as a matter of law. Generally, an insurance sales relationship does not create a fiduciary relationship sufficient to support a claim for breach of fiduciary duty. *Nat'l Union Fire Ins. Co. v. Cagle*, 68 F.3d 905, 910 (5th Cir.1995).

Plaintiffs assert that a fiduciary relationship exists here since defendant sold plaintiffs "more than just insurance policies." (Plaintiffs' Mem. of Opp. to Summ. J. at 15.) That is, plaintiffs attempt to argue that Minnesota Mutual sold them investment or retirement plans based upon defendant's "intimate knowledge of plaintiffs' personal financial situation." (*Id.*) The court, however, is not persuaded by this argument. Louisiana law is clear. An insurance contract creates no fiduciary relationship between an insurer and an insured. *See Nat'l Union Fire Ins. Co.*, 68 F.3d at 910; *Miller v. Lumbermens Mut. Cas. Co.*, 488 So.2d 273, 278 (La. Ct.App.3d Cir.1986); *Legendre v. Rodrigue*, 358 So.2d 665, 668 (La.Ct.App. 1st Cir.1978).

### CONCLUSION

For the reasons stated, the court concludes that defendant is entitled to summary judgment. Accordingly, **IT IS HEREBY ORDERED** that all of plaintiffs' claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**